A. M. FLINT and W. S. HARLEY, Doing Business under Firm Name of FLINT & HARLEY, v. FRANK SEBASTIAN, EARNEST A. KOERNER, ARTHUR W. MAHER, JOHN H. KEATING, ALBERT HOOS, GUY C. HOUCK, HENRY L. GRIESEDIECK, HENRY W. GELLER, ARTHUR E. KOERNER, EDMUND BEIMS, JOHN C. STEINLAGE and JOHN H. FECKTER, Appellants.—300 S. W. 798.

Division Two, October 10, 1927.

**1. DEFECTS OF PARTIES: Stockholders of Corporation: General Demurrer: Waiver.** A defect of parties can be reached only by special demurrer or by special plea in the answer. And a demurrer to the petition is a general demurrer, and if overruled, and even if it could be said that such general demurrer reaches the question, defendants by answering over waive it. So in an action to recover from stockholders the amount of a judgment against the corporation, the defendants, who failed to file a special demurrer or a special plea in their answer, but filed a general demurrer to the petition, and on its being overruled, answered over, cannot be heard to contend that their liability is secondary and that therefore the corporation and other creditors and stockholders were necessary and should have been joined in order that a full accounting between all interested parties might be had and their equities fully adjusted.

2. ——: ——: **Oklahoma Statutes.**  Since the Oklahoma statute provides that each stockholder of a corporation of that State "is individually and personally liable for the debts of the corporation to the extent of the amount that is unpaid upon the stock held by him" and that "any creditor of the corporation may institute joint and several actions against any of its stockholders that have not wholly paid the capital stock held by him" and that "the liability of each stockholder is determined by the amount unpaid upon the stock or shares owned by him at the time such action is brought," there is no defect of parties in an action brought by a judgment creditor of the corporation against stockholders alone, without joining the corporation or other creditors or other stockholders.

3. ——: ——: ——: **Several Judgments: General Adjustment.**  The further provision of the Oklahoma statute that "in such actions the court must ascertain the amount that is unpaid upon the stock held by each subscriber, and for which he is liable, and several judgments must be rendered against each in conformity therewith" does not mean that no creditor can realize upon an established debt against the corporation unless and until the respective rights and claims of all creditors and stockholders of the corporation have been adjudicated; but such provision was intended only as a method of measuring the liability of each individual stockholder, whether a particular creditor proceeds against any one stockholder or a number of stockholders.

4. **CREDITOR OF CORPORATION: Action against Stockholders: Exhausting Remedies.**  In an action against stockholders to recover the amount of a judgment against a corporation, the creditor proves that he has exhausted his legal remedies against the company by introducing in evidence the judgment, and a return of **nulla bona** or an unsatisfied execution thereon.

5. **ACTION AGAINST STOCKHOLDERS: Allegations of Cause of Action.**  A petition which states that defendants were stockholders of a corporation, the number of shares subscribed for and held by each, and approximately the respective amounts unpaid on the stock held by each, and praying the court to ascertain the amount that is unpaid upon the stock subscribed for and held by each, and for which each is liable, alleges that defendants were stockholders and the respective amounts unpaid on the stock held by each, and in that respect does not fail to state a cause of action.

6. ——: ——: **Waiver: Trial Theory.**  Defendants, in combating the issue whether they were stockholders of the corporation against which plaintiffs had obtained judgment, and the amount unpaid on the stock held by each, having treated the petition as containing those necessary allegations, which on appeal are asserted to be lacking, cannot now change front, but are bound by the theory adopted at the trial.

7. ——: **Proof: Minute Book: Stockholders.**  That defendants were stockholders is proved (a) by the official records of the corporation, showing the stock subscription list and all defendants as subscribers and the number of shares subscribed by each; (b) by the testimony of the officers of the company; (c) by the report of the corporation, verified by its officers and filed, as the law prescribed, with the proper state officer, containing a list of defendants as stockholders; and (d) by official proceedings of the company found in its minute book, showing an active participation in its affairs by defendants as stockholders.

8. ——: **Change in Name: Erasure.**  That the name of one defendant on the subscription list has a line drawn through it, and that the name of another appears thereon with the initials reversed, is of no importance in determining whether they were stockholders, where the name of the first appears elsewhere on the list, and the official report thereafter made listed

them as stockholders, and the official proceedings show that they participated therein as stockholders.

**9. ACTION AGAINST STOCKHOLDERS: Stockholders: Issuance of Stock.** Under the statutes and decisions of Oklahoma the issuance of certificates of stock to defendants is not necessary to constitute them stockholders of a corporation of that State. The certificates are not the stock itself, but only evidence of the stockholder's rights. The conditions required by law as preliminary to the granting of a charter to the corporation being complied with, the subscribers to the stock become stockholders, entitled to all rights as such, and their liability to pay the amount of their subscriptions becomes fixed and absolute.

**10. ———: ———: Amounts Unpaid: Proof.** The respective amounts unpaid on the stock of the twelve defendants, and the amounts for which each is liable, are shown by the official minutes of the special meeting of the stockholders at which they approved, ratified and confirmed the action of the corporation in issuing stock in a named amount to its stockholders in consideration for the transfer to it of certain oil leases at a named price, and by the testimony of its officers that all its stock subscribers, covering said shares of stock so issued, shared in the named sum paid for the leases. The amounts may also be shown and calculated by the official annual report of the corporation, showing the amount of the paid-up capital stock, and the names of the stockholders and the number of shares held by each.

**11. FOREIGN JUDGMENT: Certification.** The foreign judgment, having been admitted without objection to its form or certification, must be given its natural probative effect, and such objection, whether or not the form or certification meets the requirements of the Federal statutes or the statutes of the foreign State, cannot be considered on appeal.

**12. JUDGMENT: Joint or Several: Action against Stockholders.** In an action against stockholders of an Oklahoma corporation, brought by a creditor to recover the amount of his judgment against the company, the contention that the judgment should have been several instead of joint should have been raised in the motion for a new trial or in the motion in arrest, the Oklahoma statute being only evidentiary, and if not in some way brought to the attention of the trial court cannot be considered on appeal.

**13. ———: ———: ———: Compliance with Statutes.** In an action by a creditor of an Oklahoma corporation to recover from its twelve stockholders the amount of his judgment against the company, which was $8,441, a judgment finding the amount of the unpaid stock of each, which in no case was less than $14,437.50, and adjudging that plaintiff recover from them said sum of $8,441 and six per cent interest, amounting to $1662.27, complies with the statutes of both states, and is both joint and several; and the amount of each defendant's liability being definitely fixed by the judgment, and the liability of each being greater than the total sum adjudged by it to be paid, the rights of no one of them was or can be prejudiced by its form.

**14. ———: Interest on Foreign Judgment.** An objection to the allowance of interest on a foreign judgment from its date should be raised in the trial court, either in the motion for a new trial or the motion in arrest, and if not so raised is not reviewable on appeal. Besides, in actions on a foreign judgment, in the absence of proof of the laws of interest of the foreign State, interest should be allowed at the rate of six per cent from the date of the foreign judgment.

Corpus Juris-Cyc. References: **Appeal and Error,** 3 C. J., Section 905; p. 984, n. 19; 4 C. J., Section 2580, p. 679, n. 42; Section 2609, p. 701, n. 49; Section 3047, p. 1063, n. 43. **Corporations,** 14 C. J., Section 1272, p. 836, n. 25; Section 1731, p. 1109, n. 76; Section 1733, p. 1110, n. 87; Section 1746, p. 1119, n. 43; Section 1749, p. 1120, n. 62; Section 1776, p. 1129, n. 65. **Interest,** 33 C. J., Section 25, p. 186, n. 72. **Judgments,** 33 C. J., Section 74, p. 1125, n. 11. **Pleading,** 31 Cyc., p. 313, n. 62; p. 743, n. 9; p. 745, n. 20.

Appeal from Circuit Court of City of St. Louis.—*Hon. A. B. Frey,* Judge.

A<span>FFIRMED</span>.

*Edgar R. Rombauer* and *Greensfelder, Rosenberger & Grand* for appellants.

(1) The personal liability imposed by the provisions of the Oklahoma statute upon stockholders of a corporation is secondary, and can be resorted to only after the usual remedies against the corporation itself have been exhausted, and can then be enforced only by a suit in equity where all the creditors and the corporation itself are parties, are represented, where an accounting can be had and all the facts ascertained and the equities adjusted. Smith v. Kastor, 195 Ill. App. 458; National Bank of Auburn v. Dillingham, 147 N. Y. 603. (2) A statute in derogation of the common law, or a penal statute, must be strictly construed. Taff v. Tallman, 277 Mo. 157. (3) Plaintiff's petition fails to state facts sufficient to constitute a cause of action against defendants. It charges defendants subscribed for a certain number of shares of stock in the corporation in question, but the petition nowhere alleges that the stock was held by them. The failure to allege that defendants held stock in the corporation in question is fatal to plaintiffs' petition. (4) Plaintiffs failed to prove their case in the following particulars: First, that defendants held any stock in the corporation in question; second, the amount, if any, that was unpaid on such stock by the various defendants; and, third, that plaintiffs are judgment creditors of the company. (a) Plaintiffs' Exhibit A is not a copy of the record of any judgment. It is merely a copy of a journal entry presented to the judge for his signature in aid of the clerk, and for the clerk's assistance in making up his journal and recording the proceedings of the court. It corresponds to a memorandum or decree prepared under the customs and usages of our Missouri practice; for the accommodation and convenience of the clerk when he gets ready to spread the judgment on the court record. There is no evidence in the record that the judgment was ever rendered in plaintiffs' favor against the Oil Company, which judgment forms the basis for this lawsuit. Secs. 685, 865, 867 and 876, Compiled Statutes, Oklahoma, 1921; Bouyant v. Crockett, 12 Okla. 57; Ex parte Stevenson, 20 Okla. 549; Hilliguss v. Webb, 60 Okla. 89; Colter v. Martin, 60 Okla. 181; Midland Savings Co. v. Miller, 155 Pac. 864; Boorigie Bros. v. Tea & Coffee Co., 157 Pac. 330; Molaski v. Farris, 219 Pac. 323; Sherwood v. Miller, 37 Mo. App. 48. (b) Plaintiffs' Exhibit A, which plaintiffs term an authenticated copy of the judgment mentioned in the petition, recovered by plain-

tiffs against the company, is wholly insufficient to prove the rendition of any such judgment. Plaintiffs claim, as the very foundation of this lawsuit, that they obtained a judgment against the company, in the District Court of Kiowa County, Oklahoma, on February 1, 1921, for the sum of $8,441. To prove that, they introduced in evidence a copy of a journal entry, certified to by some court clerk. What court the attestator is clerk of, the certificate does not show. The clerk's signature is not certified to, or attested by, the judge of the District Court of Kiowa County, but by the judge of an entirely different and inferior county court. The purported authentication is insufficient. Secs. 1, 9, 10, 11 and 12, Art. 7, Okla. Constitution; Secs. 3057, 876 and 3198, Compiled Statutes, Oklahoma, 1921; Sec. 1519, Federal Statutes of 1918; Sec. 5387, R. S. Mo. 1919; Phelps v. Tilton, 17 Ind. 423; Paca v. Dutton, 4 Mo. 371; Barlow v. Steele, 65 Mo. 611; Mayer v. Lyon, 38 Mo. App. 635. (5) The Oklahoma statute expressly provides that several judgments must be rendered against each defendant in a proceeding of this kind. The trial court, therefore, erred in rendering a joint judgment against the several defendants. Farmers Bank v. Bayliss, 41 Mo. 274; Ransdell v. Threlkelds, 4 Bush (Ky.) 347; Loew's Adm. v. Telton, 84 Tex. 386; Wilkinson v. Grant (Cal.), 189 Pac. 319. (6) The court erred in allowing interest on the judgment in question. (a) At common law judgments do not carry interest. Thompson v. Monrow, 2 Cal. 101. (b) The common law of England is in force in Oklahoma. McKennon v. Winn, 1 Okla. 327; Hoppe Hdw. v. Bain, 95 Pac. 767; Major v. Etna Life Ins. Co., 260 S. W. 758.

*Patrick A. Lavin* and *William Kohn* for respondents.

(1) Not having raised the question of alleged defect of parties by demurrer or answer, defendants are precluded from doing so now. Secs. 1226, 1230, R. S. 1919; Rideout v. Burkhardt, 255 Mo. 116; Sanders v. Kaster, 222 S. W. 133; Gibson v. Shull, 251 Mo. 480; State ex rel. v. Sullivan, 283 Mo. 572; Barnard v. Keathley, 230 Mo. 209; Hudson v. Wright, 204 Mo. 412. (a) Under the constitutional provision and the statute of Oklahoma pleaded and proved, and under our law, which really governs the matter, the corporation or other creditors of the corporation, if any, were neither necessary nor proper parties. Scott v. Luehrmann, 278 Mo. 638; Scott v. Barton, 285 Mo. 427. (b) Plaintiffs exhausted their remedies against the corporation when the execution was returned *nulla bona*. In fact, under defendants' admission that the corporation was insolvent, plaintiffs could have sued without first recovering judgment. Schneider v. Johnson, 164 Mo. App. 639; Calder v. Calder Pack. Co., 160 Ill. App. 620; 6 Fletcher Ency. Corp. 7122, sec. 4129. (2) The contention that the petition does not charge that defendants held stock in the

company is not well taken, for it is alleged in the petition in at least two places that the stock was "issued to" ,defendants, and in one place that it was "held by" them; and in the prayer the court is asked to ascertain the amount that is unpaid upon the stock "held by each of the defendants" and that judgment be entered "for the amount remaining unpaid upon the stock or shares owned" by them. (a)   The case was tried and disposed of upon the theory that an allegation that defendants held stock in the corporation was in the petition.   Substantial evidence in support of such allegation was introduced without objection.   Defendants are bound by the theory upon which the case was tried below.   Machine Co. v. Bottling Co., 273 Mo. 142; Bragg v. Ry. Co., 192 Mo. 331.   (b) Under the Oklahoma law, shown by the evidence, after the granting of a charter, subscribers to the capital stock of a corporation become stockholders, so that in view of the allegation in the petition that all preliminary steps were taken and pursuant thereto a charter was granted, the allegation that defendants were subscribers is tantamount to an allegation that they were stockholders.   Cummings v. State, 149 Pac. 864.   (3)   It is not essential that a stock certificate be issued to constitute one a stockholder.   Griswold v. Seligman, 72 Mo. 110; Natl. Bank v. Shire, 88 App. Div. 401, 84 N. Y. Supp. 810; Petty v. Knight-Petty Merc. Co., 220 Pac. 835; Natl. Bank v. Shire, 179 N. Y. 587; Chester Glass Co. v. Dewey, 16 Mass. 94; Holland v. Iron Min. Co., 65 Minn. 324; U. S. Radiator Corp. v. State, 208 N. Y. 114; Lipscomb v. Condon, 56 W. Va. 416; In re Phoenix Hdw. Co., 249 Fed. 410; Rasor v. W. Coast D. Co., 192 Pac. 631.   Having established that defendants were stockholders, the presumption is that they continued as such until the contrary appears.   In fact, under the Oklahoma decisions introduced in evidence, subsequent transfers do not relieve stockholders of liability for unpaid stock.   Chilson v. Cavanaugh, 160 Pac. 601; Barron v. Paine, 83 Me. 312; Huey v. Patterson, 174 Pac. 939.   (4)   No objection was made to the introduction of the copy of the execution nor to the testimony of Flint, both of which establish that the judgment was recovered.   As to the copy of the judgment, the only objection to it was that "it did not show the sheriff's return." This objection is abandoned in this court.   The objections to the document made here were not made in the court below.   Not having made the objections at the time the copy of the judgment was offered in evidence, defendants cannot make them now.   Natl. Bank of Commerce v. Pierce, 280 Mo. 633; Williams v. Lobban, 206 Mo. 399; McCune v. Goodwillie, 204 Mo. 306; Baade v. Cramer, 278 Mo. 516; Keyes v. Munroe, 266 Mo. 114; Meddis v. Kenney, 176 Mo. 200; Kansas City v. Railroad Co., 77 Mo. 180; Chouquette v. Barada, 28 Mo. 491; State ex rel. Hirsch v. Silverstein, 77 Mo. App. 304.   "Inadmissible evidence admitted without objection is not a nullity or void of probative force, but is to be given its natural effect as if it was in

law admissible." Sawyer v. French, 235 S. W. 126. (5) The contention that the judgment is a joint judgment and should have been a "several judgment" was not made in the trial court. The three motions for new trial of the several defendants are silent as to this; so are the two motions in arrest of judgment. If the form of the judgment was erroneous, attention was not called to the matter in the trial court. It was given no opportunity to correct it. Defendants, therefore, are precluded from raising the question in this court. Sec. 1512, R. S. 1919; Hubbard v. Slavens, 218 Mo. 598; Baade v. Cramer, 278 Mo. 516; Freeland v. Williamson, 220 Mo. 217; Howell v. Aiken, 262 Mo. 403; Farmers Bank v. Ogden, 192 Mo. App. 243. (a) That part of the Oklahoma statute which relates to the remedy is not binding here, for the law of the forum governs the remedy. Broadhead v. Noyes, 9 Mo. 56; Dorsey v. Hardesty, 9 Mo. 157; Baker v. Stonebraker, 36 Mo. 338; Willard v. Wood, 164 U. S. 502; Dexter v. Edmonds, 89 Fed. 467; Randall v. Sanitas, 120 Minn. 268. (b) Under our procedure there can be but one judgment against all defendants. Our statute authorizes the entry of a judgment against one or more of several defendants. This is true also under the Oklahoma statute. Secs. 1160; 1522, 1528, R. S. 1919; State ex rel. Dunklin County v. Blakemore, 275 Mo. 695; Connelly v. Railroad, 169 Mo. App. 272; Levy v. Tradesmen's Bank, 188 Pac. 1077. (6) . Under statute in this State, foreign judgments bear interest from their date at the rate of six per cent per annum. Sec. 6493, R. S. 1919; Shickle v. Watts, 94 Mo. 410; Hopkins v. Shepard, 129 Mass. 600; Clark v. Child, 136 Mass. 344; Wells F. & Co. v. Davis, 105 N. Y. 670; Olson v. Veazie, 37 Pac. 677.

HENWOOD, C.—The respondents, as judgment creditors in Oklahoma of the St. Louis-Oklahoma Oil Company, an Oklahoma corporation, filed a suit in equity in the Circuit Court of the City of St. Louis against appellants for the recovery of $8,441, covering work and labor done under a contract with said company for the drilling of an oil well, the theory of recovery against appellants being their liability as stockholders of said company for its debts to the extent of the amount unpaid on their stock in the company, under the Constitution and statutes of Oklahoma. Joseph Griesedieck was originally joined as a defendant, but the plaintiffs dismissed as to him following the hearing in the case. The trial court found the issues for respondents and rendered judgment accordingly. The case is here for review on an appeal from said findings and judgment.

The trial petition alleges that on February 1, 1921, in the District Court of Kiowa County, Oklahoma, the plaintiffs recovered judgment against the St. Louis-Oklahoma Oil Company for work and labor in the sum of $8,441 and costs, and that under the laws of Oklahoma said judgment bears eight per cent interest from date; that execution

on said judgment was issued on January 17, 1922, and returned *nulla bona;* that said company is insolvent and no assets can be found to satisfy said judgment, interest and costs; that said company was duly organized under the laws of Oklahoma in May, 1917, with a capital stock of $500,000, divided into 500,000 shares of stock, of the par value of one dollar each, and "that, among others, the *subscribers to the capital stock of said corporation were the defendants, and the number of shares subscribed by each of them* is as follows: Frank Sebastian, 30,000 shares; Earnest A. Koerner, 30,000 shares; Arthur W. Maher, 15,000 shares; John H. Keating, 15,000 shares; Albert Hoos, 15,000 shares; Guy C. Houck, 15,000 shares; Henry L. Griesedieck, 15,000 shares; Henry W. Geller, 15,000 shares; Arthur E. Koerner, 30,000 shares; Edmund W. Beims, 15,000 shares; John C. Steinlage, 15,000 shares; John H. Feckter, 15,000 shares; Joseph Griesedieck, 15,000 shares;" that Section 39 of Article IX of the Constitution of Oklahoma provides that no corporation organized under the laws of Oklahoma shall issue stock except for money, labor done and property actually received, to the amount of the par value thereof, and that Section 1263 of the Revised Statutes of Oklahoma of 1910 provides that each stockholder of a corporation is individually and personally liable for the debts of the corporation to the extent of the amount that is unpaid on the stock held by him, and any creditors of a corporation may institute joint or several actions against any of its stockholders who have not fully paid for their stock, and in such actions the court must ascertain the amount unpaid and for which each subscriber is liable, and render several judgments in conformity therewith; "that none of the defendants paid in full for the *stock issued to or subscribed for by them,* as above set out, and that about seventy-five per cent of the par value of the *stock issued to or subscribed for by each of said defendants* remains unpaid," and that, therefore, under the Constitution and statutes and court decisions of Oklahoma, the defendants are each individually and personally liable to plaintiffs for the amount of said judgment, interest and costs, "to the extent of the amount that is unpaid upon the *stock subscribed for, held by or issued to said defendants and each of them.*"

The prayer of the petition asks the court "to ascertain the amount that is unpaid upon the *stock subscribed for or held by each of the defendants,* and for which each of them is liable," and that judgment be rendered accordingly, "in an amount not exceeding the amount remaining unpaid upon the *stock or shares owned or subscribed for by each*" of the defendants, and sufficient to satisfy said judgment, with accrued interest at eight per cent per annum, and for costs in both cases, and for all proper relief.

The trial answer is a general denial.

The plaintiff Flint testified, in substance, as follows:

He was an oil-field worker and driller and had been in business for thirty-two years. He and his partner did business under the firm name of Flint & Harley. He made the first arrangements to do drilling work for the company with the defendant Sebastian in November, 1919. Sebastian represented that he was president and general manager of the company and wanted a contractor to drill wells. Sebastian told him the company was thoroughly reliable, that it was incorporated under the laws of Oklahoma for $300,000, that it had production in Oklahoma and was also drilling a wild-cat well. He relied on these representations when he went to work and did not know that $270,000 of the stock had been paid for in leases. Leases were worth one or two dollars an acre in a pure wild-cat country, but were valueless when no oil was found. He was drilling for the company in a strictly wild-cat country. Some oil had been found about twenty-five miles from there.

On cross-examination he further testified: He drilled a well for the company in the Red River district, on a lease in the disputed area between Texas and Oklahoma. He did not drill any wells for the company in Kiowa County. He did not have a written agreement with Sebastian, having made some inquiries and concluded the company was all right. After working about twenty-five days he drew a sight draft on the company for $3200, according to the company's instructions. The sight draft was not honored and he never got the money. He continued working for the company and was never notified to quit. The company's auditor said to him: "We have money in the bank to pay you." He took a check from the auditor for part of the money due and the check was returned protested. When the work was completed the total amount due was $8,441, and his firm sued the company at Hobart, Oklahoma. The company filed an answer to the suit and was represented by counsel, but offered no evidence. The sheriff was ordered to file on the company's property, but no property was found and nothing was realized on the judgment.

The plaintiffs offered in evidence the depositions of several landowners in the vicinity of the company's operations, which tend to show that oil leases, at the time in question, were obtained for prices ranging from one dollar to five dollars per acre, the chief consideration being the drilling of wells. Six of these witnesses testified, by deposition, that they leased parcels of land to the company for a cash consideration of one dollar per lease. One of these leasors actually received two dollars for two leases; two others one dollar each; and two others did not receive the cash price of one dollar each, as provided for in their leases.

Plaintiffs' Exhibits A, B, C, D, E, F and H (all documentary) and other documents admitted in evidence will be quoted in full or stated,

in substance, as may seem necessary and proper for our consideration of the same.

Exhibit A is a certified copy of the Oklahoma judgment mentioned in the petition, together with the certification thereto, and the same will be quoted in full, as follows:

## EXHIBIT A.

In the District Court for Kiowa County, State of Oklahoma.

A. M. Flint and W. S. Harley, doing
    business under the firm name of
    Flint & Harley,

|  |  |
|---|---|
| Plaintiffs, | |
| vs. | Journal Entry. |
| St. Louis-Oklahoma Oil Company, Defendant. | |

And now on this, the 1st day of February, 1921, at an adjourned term of the regular December term of said court, this cause comes on for hearing in its regular order. Plaintiffs appear in person and by their attorney, T. W. Conner, and the defendant appears by its attorney, J. R. Tolbert.

Thereupon plaintiffs announce ready for trial and defendant announces ready for trial and a jury is waived and the issues submitted to the court.

The court finds from the records and files of the case and from the evidence introduced by plaintiffs that defendant is a corporation; that personal service of summons was made in this action on the defendant; that defendant is due to plaintiffs for work and labor the sum of eight thousand four hundred and forty-one dollars.

Wherefore, it is considered, ordered, adjudged and decreed by the court that plaintiffs have judgment against defendant for the sum of eight thousand four hundred and forty-one dollars and all costs of this action, taxed in the sum of $...................

                           Thomas A. Edwards,
                                  Judge.

Attest:
   Ella White,
      Court Clerk (Seal).

O. K.: T. W. Conner, Attorney for Plaintiffs.

O. K.: Tolbert & Tolbert, Attorney for Defendant.

Endorsements: 3229. A. M. Flint et al. v. St. Louis-Oklahoma Oil Co., Journal Entry. Filed Feb. 2, 1921.
Ella White, Court Clerk. Recorded in Journal, 14 on page 307.

State of Oklahoma, }
             } ss.
County of Kiowa. }

I, Ella White, Court Clerk in and for county and state aforesaid, do hereby certify that the hereto attached is a true, correct and com-

plete copy of the journal entry of judgment in the matter of A. M. Flint and W. S. Harley, doing business under the firm name of Flint & Harley, plaintiffs, v. St. Louis-Oklahoma Oil Company, defendant, case No. 3229, District Court, Kiowa County, Oklahoma, as the same appears of record and on file in this office.

Witness my hand and official seal this 14th day of January, 1922.

(Court Clerk Seal                                    Ella White,
  Kiowa County, Oklahoma)                         Court Clerk.

State of Oklahoma,⎫
                  ⎬ ss.
County of Kiowa.  ⎭

I, J. S. Carpenter, County Judge in and for said county and state, do hereby certify that Ella White is the duly elected, qualified and acting court clerk in and for Kiowa County, State of Oklahoma; that the above signature is her genuine signature and that said certificate is in due form of law.

Witness my hand and official seal this 14th day of January, 1922.

(County Court Seal                 (Signed) J. S. Carpenter,
  Kiowa County, Oklahoma)                  County Judge.

State of Oklahoma,⎫
                  ⎬ ss.
County of Kiowa.  ⎭

I, Ella White, Court Clerk in and for said county and state, do hereby certify that J. S. Carpenter is the duly elected, qualified and acting County Judge in and for Kiowa County, State of Oklahoma; that the above signature is his genuine signature and that said certificate is in due form of law.

Witness my hand and official seal this 14th day of January, 1922.

(Court Clerk Seal                         Ella White,
  Kiowa County, Oklahoma)                  Court Clerk.

Exhibit B is a certified copy of the execution on the judgment above quoted, issued January 17, 1922, and the sheriff's *nulla bona* return thereon, on the same day.

Exhibit C is a certified copy of the charter of the St. Louis-Oklahoma Oil Company, issued May 28, 1917, in which Philip J. Scheuerman, H. W. Geller and A. W. Maher of St. Louis, Missouri, and M. W. Newman and E. E. Mooney of Oklahoma City, Oklahoma, are named as the incorporators of the company, and in which it is recited that the company has a capital stock of $500,000, and that its principal place of business is Oklahoma City, Oklahoma.

Exhibit D is a certified copy of the articles of incorporation of the company, dated May 23, 1917, which provide for a capital stock of $500,000, divided into 500,000 shares of one dollar each, and state that the purpose of the corporation is to drill and mine for oil and gas, and that Philip J. Scheuerman, H. W. Geller, A. W. Maher, A. E. Koerner, E. E. Mooney and M. W. Newman shall serve as directors and trustees of the company until officers are elected.

Exhibit H is the minute book of the company's official proceedings, certain portions of which were offered in evidence, as follows:

First, the stock subscription list appearing on pages 2 and 3. A photostatic copy of this subscription list shows the same to be in the

usual printed form with the blank spaces for the insertion of the name of the company and the date and place of the subscription not filled in. Among other subscribers, the names of all of the defendants (appellants) and the amounts of their respective subscriptions appear on the subscription list by the same names and in the same amount as alleged in the petition in this case, except the subscriber Geller, who is listed as Wm. H. Geller, and the subscribers Keating, Beims, Griesedieck and the two Koerners, who are listed as J. H. Keating, E. W. Beims, H. L. Griesedieck, A. E. Koerner and E. A. Koerner. On the first page of the subscription list (page 2 of minute book) lines are drawn through the names of the subscribers H. L. Griesedieck, E. E. Mooney and M. W. Newman, and on the second page of the subscription list (page 3 of minute book) the names H. L. Griesedieck, Arthur W. Maher and E. A. Koerner appear again with the same addresses as given on the first page, but, apparently, all are in a different handwriting than that in which the same names and addresses are written on the first page.

Second, minutes of the first meeting of stockholders appearing on pages 14 and 15 of the minute book. The minutes show that this meeting was held in St. Louis, June 2, 1917, and that the defendants (appellants) Keating, Hoos, Houck, Sebastian, Griesedieck, Geller, Maher and the two Koerners were present as stockholders, holding shares of stock as alleged, and that A. E. Koerner was elected and acted as secretary of the meeting; also, that A. E. Koerner, Maher and Sebastian were elected directors of the company; and also that Houck, A. E. Koerner, Griesedieck, Hoos, Sebastian, Steinlage and Feckter signed the minutes of the meeting.

Third, minutes of the first meeting of directors, appearing on pages 16 to 20 of the minute book, which show the meeting of directors immediately following the stockholders' meeting; that, at this meeting, officers of the company were elected and a committee appointed to draft by-laws for the company. These minutes were signed by Sebastian, as secretary of the company, and by Sebastian and A. E. Koerner, as directors. The minutes show Maher present as a director, but he did not sign the minutes.

Fourth, waiver of notice of special stockholders' meeting, attached to page 25 of minute book, showing such meeting called for May 27, 1918, at Oklahoma City, and the waiver signed by all of the defendants (appellants), except Griesedieck and Geller.

Fifth, minutes of special meeting of stockholders, held in Oklahoma City on May 27, 1918, appearing on page 25 of minute book, with four extra sheets attached, showing Sebastian present in person, and Keating, Hoos, Houck, Geller, Beims, Steinlage, Feckter, Maher and the two Koerners present by proxy. The minutes of this meeting show the adoption, ratification and approval of the action of the company in issuing to *"its stockholders"* 270,000 shares of stock of the

par value of one dollar each and in accepting as consideration therefor certain oil and gas leases.

Sixth, waiver of notice of a special directors' meeting, attached to page 25 of minute book, showing such meeting called for May 27, 1918, at Oklahoma City, and the waiver of notice signed by Sebastian, Maher and A. E. Koerner.

Seventh, minutes of the special directors' meeting, attached to page 25 of minute book, showing the meeting held at the time and place indicated in the notice, above mentioned; also the adoption of a resolution in which the directors ratified, approved and confirmed the action of the company in issuing shares of stock in the sum of $270,000 and in accepting as consideration certain oil and gas leases, covering eleven parcels of land in Kiowa County, Oklahoma; also, the adoption of a resolution by which the directors adopted, ratified and approved the issuance of stock to certain named persons, including all of the defendants (appellants), except Griesedieck, and in the amounts alleged.

Exhibits F, E and G, respectively, were certified copies of the annual reports of the company for 1917, 1918 and 1920, filed in the office of the Corporation Commission of Oklahoma. The 1917 report (Ex. F) shows all of the defendants (appellants) as stockholders in the company and holding the number of shares alleged. The 1918 report (Ex. E) shows all of them with holdings as alleged, except Griesedieck and Maher, whose names do not appear on the list of stockholders. The 1920 report (Ex. G), as abstracted, does not show a list of stockholders. The 1917 report (Ex. F) shows the company's *"paid-up capital was $10,000, invested in leases."* The 1918 report (Ex. E) shows $270,000 as paid-up capital, with $10,000 invested in leases. The 1920 report (Ex. G) shows $234,160 as paid-up capital, and $10,000 expended on leases in actual development. The 1917 and 1918 reports (Exs. F and E) were sworn to by Scheuerman, as president of the company, and attested by Sebastian, as secretary. The 1920 report (Ex. G) was sworn to by Sebastian, as president of the company.

The plaintiffs offered in evidence Section 39 of Article IX of the Constitution of Oklahoma, and Sections 1263, 1267 and 7541 of the Revised Statutes of Oklahoma, 1910.

Section 39 of Article IX of the Constitution reads as follows:

"No corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof, and all fictitious increases of stock or indebtedness shall be void, and the Legislature shall prescribe the necessary regulations to prevent the issue of fictitious stock or indebtedness."

Section 1263 of the statutes provides that:

"Each stockholder of a corporation is individually and personally liable for the debts of the corporation to the extent of the amount

that is unpaid upon the stock held by him.  Any creditor of the corporation may institute joint or several actions against any of its stockholders that have not wholly paid the capital stock held by him, and in such actions the court must ascertain the amount that is unpaid upon the stock held by each stockholder and for which he is liable, and several judgments must be rendered against each in conformity therewith.  The liability of each stockholder is determined by the amount unpaid upon the stock or shares owned by him at the time such action is commenced.''

Section 1267 provides that all corporations organized for profit shall keep a record of all of their business transactions and of all of the proceedings had at all meetings of stockholders and directors, and that the record of such proceedings shall show every act done or ordered to be done, and who were present at and absent from said meetings.

Section 7541 provides that every domestic corporation shall file, annually, in the office of the Corporation Commission a statement, verified by its president, secretary or managing officer, showing its stockholders, officers and directors and their addresses and the amount of stock held by each.

The plaintiffs also offered in evidence certain decisions of the Supreme Court of Oklahoma, namely, in the cases of Chilson v. Cavanaugh, 160 Pac. 601, Cassidy v. Hornor, 208 Pac. 775, Cummings v. State ex rel. Wallower, 149 Pac. 864, and Petty v. Knight-Petty Merc. Co., 220 Pac. 835.  [Futher reference to these decisions or some of them will be made in the discussion of the provisions of the constitution and statutes of Oklahoma above mentioned.]

And the plaintiffs also offered in evidence the original answer of the defendants in this case, which admitted the insolvency of the St. Louis-Oklahoma Oil Company.

On the defendants' side the only evidence offered was the testimony of the defendants Sebastian and Arthur E. Koerner.

The testimony of Sebastian, in substance, was as follows:

He was first secretary and later president of the company. The affairs of the company were closed in 1920.  He had an interest in some leases, acquired from Newman and Mooney, covering certain sections in Kiowa County, Oklahoma.  The leases were transferred to the company for a money consideration.  ''These gentlemen whose names you see on the list'' (referring to the list attached to the petition) ''furnished the money to pay for the leases.  They purchased the leases from Mr. Mooney and Mr. Newman.  Ten thousand dollars was paid for the leases, and then the corporation was organized and the leases were turned over to the corporation.  This $10,000 was actually paid to Mooney and Newman by these individuals whose names have just been read.''  Some of the stockholders objected to the amount of stock given for these leases and, on the advice of the company's at-

torney, an appraisement of the leases was made in 1919, after the company had been operating and drilling, by three disinterested oil men of experience, and they appraised the leases at $200. After the appraisement, the stock to be issued for the leases was reduced from $270,000 to $135,000. The company did not attempt to sell any stock, but some of the individual stockholders sold stock and used the proceeds for development purposes. He sold some personal stock. None of the stock was ever issued to the original subscribers, except one who brought suit and, in accordance with the court's order, he received his certificate.

On cross-examination this witness gave the following testimony:

"Q. Now, I believe you testified that these fourteen defendants paid $10,000 for those leases, and then immediately turned the leases over to the company and got $270,000 in stock for it; isn't that correct? A. Yes."

Further testifying on cross-examination this witness said that Mr. Speers brought suit for his stock and the court found he was entitled to it. All these other defendants could have done the same thing. The stock was not issued to the rest of the subscribers, but they "may have" participated and voted at meetings.

In answer to questions by the court, he said only personal sales of stock were made in order "to get around" the blue-sky law. And he was further examined by the court as follows:

"Q. And you issued this stock to those particular people, and were selling out this stock to these other people? A. Yes.

"Q. As a matter of fact, this stock belonged to the several people to whom it was issued? A. Yes."

Arthur E. Koerner, on direct examination, testified that he was one of the original incorporators of the company and subscribed for 30,000 shares, but did not actually receive any stock; that the acreage acquired from Mooney and Newman was assigned to him pending the preliminaries in the organization of the company; and that $10,040 was paid to Mooney and Newman for the leases, and then the company was incorporated and work begun.

On cross-examination he said: "I did not get 30,000 shares of stock. I did not subscribe for it. It was not a formal subscription. It may be that I voted that much stock at different meetings. I understood that stock of the par value of $270,000 was to be issued to these men who had paid up $10,040."

The findings and judgment of the court are as follows:

"And now on this 12th day of May, 1924, upon due consideration of this cause, having been fully advised concerning the law and having duly considered the evidence introduced by the respective parties, the court doth find that the allegations of plaintiffs' first amended petition herein are true and that plaintiffs are entitled to the relief

prayed for in said amended petition; and the court doth further find that the amounts that are unpaid upon the stock in the St. Louis-Oklahoma Oil Company, subscribed for and held by each of the defendants herein at the time of the commencement of this action and for which each one is liable, are as follows:

|  | Number of shares of stock | Amount unpaid and for which he is liable |
|---|---|---|
| Frank Sebastian | 30,000 | $28,875.00 |
| Ernest A. Koerner | 30,000 | 28,875.00 |
| Arthur W. Maher | 15,000 | 14,437.50 |
| John H. Keating | 15,000 | 14,437.50 |
| Albert Hoos | 15,000 | 14,437.50 |
| Guy C. Houck | 15,000 | 14,437.50 |
| Henry L. Griesedieck | 15,000 | 14,437.50 |
| Henry W. Geller | 15,000 | 14,437.50 |
| Arthur E. Koerner | 30,000 | 28,875.00 |
| Edmund W. Beims | 15,000 | 14,437.50 |
| Jno. C. Steinlage | 15,000 | 14,437.50 |
| John H. Feckter | 15,000 | 14,437.50 |

"And the court doth further find that on the 1st day of February, 1921, plaintiffs recovered judgment against the said St. Louis-Oklahoma Oil Company (a corporation duly organized under the laws of the State of Oklahoma) in the District Court for Kiowa County, State of Oklahoma, in the sum of $8,441; that nothing has been paid on account of said judgment; that an execution issued upon said judgment has been returned unsatisfied; that said corporation is and was at the time of the commencement of this suit insolvent, and plaintiffs are, therefore, entitled to recover from the defendants herein the amount of said judgment with interest thereon at the rate of six per cent per annum from February 1, 1921, and the costs of this suit.

"It is, therefore, ordered, adjudged and decreed that plaintiffs have and recover of the defendants Frank Sebastian, Ernest A. Koerner, Arthur W. Maher, John H. Keating, Albert Hoos, Guy C. Houck, Henry L. Griesedieck, Henry W. Geller, Arthur E. Koerner, Edmund W. Beims, John C. Steinlage and John H. Feckter the sum of $8,441 with interest from February 1, 1921, at the rate of six per cent per annum, which interest amounts to $1,662.67, making a total judgment in the sum of $10,103.67, and the costs of this suit and have therefor execution."

I. Appellants first contend that there is a defect in parties plaintiff and defendant in this case; that, the liability of defendants being secondary, the company and other creditors and stockholders were necessary parties, in order that a full accounting between all interested parties be had and their

**Defect of Parties.**

equities fully adjusted. As to this contention, it would be sufficient to say that this point was not raised in the trial court and is, therefore, not here for review. The record merely shows the filing of a demurrer to the petition and that the demurrer was overruled as to the first count and sustained as to the second count. Manifestly, this was a general demurrer. It is an elementary rule that a defect in parties can be reached only by special demurrer or by special plea in the answer. Defendants failed to take either course. In this situation it follows that all questions as to defect in parties were waived. And if it be said that the demurrer filed did reach this question, then defendants waived the point by answering over. [Secs. 1226, 1230, R. S. 1919; Barnard v. Keathley, 230 Mo. l. c. 222; Mitchell v. Sparlin, 255 Mo. l. c. 124; State ex rel. v. Sullivan, 283 Mo. l. c. 572.] However, as we construe the Oklahoma statute in question there is no merit in this contention. The plain language of the statute, in our opinion, clearly refutes appellants' position in this particular. The statute provides that "*each stockholder* of a corporation is *individually* and *personally liable* for the debts of the corporation *to the extent of the amount that is unpaid upon the stock held by him; any creditor* of the corporation may institute *joint* or *several actions against any of its stockholders* that have not wholly paid the capital stock held by him." And further that "the *liability of each stockholder* is determined by the amount unpaid upon the *stock or shares owned by him* at the time such action is commenced." True, this statute does further provide that "in such actions the court must ascertain the amount that is unpaid upon the stock held by each subscriber, and for which he is liable, and several judgments must be rendered against each in conformity therewith," but from this provision it cannot be concluded, in reason, that no creditor can realize on an established debt against the corporation unless and until the respective rights and claims of all of the creditors and stockholders of the corporation have been adjudicated. Taking the statute as a whole, it is our view that this provision was intended only as the method of measuring the liability of each individual stockholder, whether any particular creditor proceeds against any one stockholder or any number of stockholders. The case of National Bank v. Dillingham, 147 N. Y. 603, cited by appellants, is clearly distinguishable on the pleadings and facts. We think likewise of the case of Smith v. Kastor, 195 Ill. App. 458, in which case appellants insist a contrary ruling on this proposition is announced. If so, such ruling by the Illinois Court of Appeals is not in accord with rulings of the Supreme Court of Illinois on the same question. The rule declared and the reasoning employed by the Supreme Court of Illinois in the case of Edwards v. Schillinger, 245 Ill. 231, in construing the Missouri statute, is exactly the same in effect as our construction of the Oklahoma statute. In discussing this identical proposition, that court says:

"The creditor of a corporation can proceed in equity without a call and without taking any account of other indebtedness or making all stockholders defendants. The liability of a stockholder for unpaid subscriptions is several and not joint, and the creditor is not bound to settle up the affairs of the corporation in order to obtain his dues. [Hatch v. Dana, 101 U. S. 205.] A creditor of a corporation seeking satisfaction of his debt need look no further than to find a solvent stockholder who is liable for it, and he sustains no relation to the corporation which requires him to adjust equities between stockholders or between the corporation and others. [Ogilvie v. Knox Ins. Co., 22 How. 380.]" [For local citation, see 91 N. E. l. c. 1052.] See, also, Mandel v. Swan Land Co., 154 Ill. l. c. 186; Beach on Private Corporations, sec. 148.

While it must be conceded that the provisions of the constitution and statute of Oklahoma are controlling in this case, the rulings of this court in construing very similar constitutional and statutory provisions in this State are helpful in further illuminating this discussion and in reaching a sound conclusion as to the meaning of the laws of our sister State here involved. For this purpose only, we quote from the case of Scott v. Barton, 285 Mo. l. c. 438, as follows:

"Appellants were not compelled to sue all of the interested parties; the obligation was not a joint one; no particular stockholder was liable for the payment of what another stockholder owed, hence appellants could sue such as they desired. Respondents could have, had they so desired, brought in as parties to the action all of the interested parties so that contribution could be adjudged among them, but we think the responsibility to pursue this course rested upon them." See also Scott v. Luehrmann, 278 Mo. l. c. 646.

In this connection, appellants make some reference to the rule requiring a creditor to exhaust his remedies against the corporation before proceeding against the stockholders. All such requirements were fully met by the respondents in this case, by the

**Exhausting Remedies Against Corporation.** judgment against the company and the general execution thereon, returned *nulla bona*. Moreover, the insolvency of the company was admitted by appellants in their original answer, and the testimony of the witness Flint, for plaintiffs, and of the witnesses Sebastian and Koerner, for defendants, tends to further support this conclusion. 6 Fletcher Cyc. Corp. 7122, section 4129, is squarely in point. It says: "A creditor proves that he has exhausted his legal remedy by introducing in evidence his judgment against the corporation, with the return unsatisfied of the execution thereon. The return of execution unsatisfied is conclusive evidence that the creditor has exhausted his legal remedy."

317 Mo. Sup.—86.

II. It is next contended by appellants that the petition fails to state a cause of action, because it does not allege that defendants were stockholders in the company and the respective amounts un-

**Petition: Amounts Unpaid.** paid upon the stock held by them. The direct and positive allegations of the petition, covering both of the matters mentioned, is sufficient answer to this contention. As ap-

pears from even a casual examination of the petition, above stated, it alleges, both in words and in effect, that the defendants were *stockholders,* and also alleges definitely the *number of shares subscribed for and held by the defendants* and approximately the *respective amounts unpaid on the stock held by each of them.* The prayer of the petition, though not embraced in the charging part of the petition, sheds some light on the character of the case pleaded, by requesting the court "to ascertain the amount that is unpaid upon the stock subscribed for or held by each of the defendants, and for which each of them is liable," as provided by the statute in question. Moreover, the defendants, in combating the issue as to whether they were or were not stockholders, treated the petition as containing the allegations now claimed to be wanting. Having adopted this theory of defense at the trial, the defendants cannot, under the rules, change front in this court. [Machinery Co. v. Bottling Co., 273 Mo. 1. c. 148; Bragg v. Ry. Co., 192 Mo. 1. c. 358.]

III. Appellants earnestly insist that the evidence is not sufficient to sustain the findings and judgment of the trial court, in three particulars; first, that defendants were stockholders; second, the respective amounts unpaid on their stock and for which each of them is liable; third, that the plaintiffs were judgment creditors of the company.

The finding that the defendants were stockholders is amply supported by both the official records and papers of the company and

**Proof: Stockholders.** the testimony of the defendants Sebastian and Koerner, as appears from the above recital of the evidence. The stock subscription list, found at pages 2 and 3 of the company's minute book (Ex. H), shows all of the defendants as subscribers for shares of stock in the company in the respective amounts alleged in the petition and as found by the court. The annual report of the company for 1917 (Ex. F), filed with the Corporation Commission of Oklahoma, as prescribed by law, and verified by the officers of the company, lists all of the defendants as "stockholders" and in the respective amounts alleged and found by the court. The direct and positive testimony of the defendants Sebastian and Koerner is to the same effect. Other official proceedings of the company, found in its minute book (Ex. H) show an active participation in its affairs by all of the defendants as stockholders, at one time or another. The special complaint against the court's findings as to the defend-

ants Griesedieck and Geller is of no value in the face of the company's official report of 1917 (Ex. F), listing them as "stockholders" and official proceedings of the company (Ex. H), in which they participated as such. The report and proceedings mentioned occurred after the closing of the stock subscription list, above referred to, on which Griesedieck's name has a line drawn through it in one place, though appearing in another place, and on which Geller's name appears with his initials reversed.

In connection with the sharp issue presented by the testimony of the defendants Sebastian and Koerner as to whether or not the stock in question was ever isued to the defendants, it should be **Stockholders.** noted here that the rulings of the Supreme Court of Okla- **Subscribers** homa fix their status and liability as stockholders, whether **are** stock certificates were actually issued to them or not.

In the case of Cummings v. State ex rel. Wallower, 149 Pac. l. c. 866, that court said: "The moment the conditions required by law as preliminary to the granting of the charter to the corporation were complied with, the subscribers to its stock became stockholders, entitled as such to all the rights of such, and at the same time their liability to pay the amount of their subscription became fixed and absolute."

In the case of Petty v. Knight-Petty Mercantile Co., 220 Pac. 835, that court held that "from the fact that a certificate of stock is not the stock itself, but merely evidence of the stockholder's rights, it follows that, in the absence of provisions to the contrary, the issue of certificates of stock is not at all necessary, either to the existence of a joint-stock corporation or to make one a stockholder in such a corporation, for one may be a stockholder without the formal written evidence of his rights."

While appellants' counsel, in their brief, suggest only the failure of any proof to show that the defendant Griesedieck continued to be a stockholder until the commencement of this action, the following rule applies to all of the other defendants as well as Griesedieck:

"The liability thus imposed upon one who, by accepting corporate stock, as an original shareholder, obligates himself to pay the corporation therefor in money, labor done, or property is a continuing one, at least so far as the creditors of the corporation in good faith are concerned, and is not discharged by the mere transfer of such stock to an innocent holder. . . . It is the plain duty of the courts to construe and enforce this provision so as to render it effectively remedial of the evil against which it is directed." [Chilson v. Cavanaugh, 160 Pac. l. c. 602.]

The defendants were afforded full opportunity at the trial to enlighten the trial court on this and other matters, but, apparently, they did not see fit to do so.

1364     SUPREME COURT OF MISSOURI, VOL. 317.     [April Term,

The court's findings as to the respective amounts unpaid on the stock subscriptions of the defendants, and as to the respective amounts for which each is liable, are fully warranted by the official minutes of the special meetings of the stockholders of the com-

**Unpaid Amounts: Proof.** pany, held in Oklahoma City on May 27, 1918 (Ex. H), in which they approved, ratified and confirmed the action of the company in issuing $270,000, of the capital stock to "its stockholders" in consideration for the transfer of certain oil leases, and by the testimony of the defendants Sebastian and Koerner to the effect that all of stock subscribers, covering 270,000 shares, shared in the payment of $10,000 or $10,040, for said oil leases. These findings are further supported by the official reports of the company for 1917, 1918 and 1920 (Exs. F, E and G), showing the paid-up stock of the company at the times indicated. The holding of 225,000 shares of stock by these twelve defendants, and sharing proportionately in the total sum of $10,000 or $10,040 paid for 270,000 shares of stock, furnishes a sound and reasonable basis of calculation for the court's findings as to the respective amounts paid by each of the defendants and the respective amounts remaining unpaid on the stock of each defendant.

The findings of the court that the plaintiffs were judgment creditors of the company and that their judgment was unsatisfied are supported by the records of the court in which the judg-

**Foreign Judgment: Certification.** ment was rendered (Exs. A and B) and the testimony of the plaintiff Flint. Appellants now strenuously object to the form of the judgment as offered in evidence and to the failure of the certification thereof to properly authenticate the same, but no such objections were made in the trial court and, of course, cannot be made here for the first time. Exhibit A, a copy of the Oklahoma judgment, being admitted without proper objection, was given its natural probative effect by the trial court and must be so considered here, regardless of the question of whether or not its form and certification meets the requirements of the Federal statute and the statute of this State relating to the form and certification of foreign judgments. [Sawyer v. French, 235 S. W. l. c. 130; Williams v. Lobban, 206 Mo. l. c. 407; McCune v. Goodwillie, 204 Mo. l. c. 333.]

We rule that these and the other findings of the trial court not only have substantial support in the evidence, but are supported by the greater weight of the evidence.

IV. Further complaint is made by appellants as to the form of the judgment, that is, that the judgment is a joint judgment, whereas the

Oklahoma statute provides that several judgments shall be rendered in cases of this character. If it be true, as appellants **Judgment: Several or Joint.** contend, that the Oklahoma statute is controlling as to form of the judgment, then this point should have been raised in the motions for new trial, the Oklahoma statute being purely evidentiary in this case. However, this challenge as to the form of the judgment was not brought to the attention of the trial court, in either of the motions for new trial or the motions in arrest of judgment, and is, therefore, not before us for review. [Sec. 1512, R. S. 1919; Baade v. Cramer, 278 Mo. 1. c. 528.] Certainly, the rule should be invoked in a matter so vital as this. But, it may be said that this judgment meets the requirements of both the Missouri and the Oklahoma statutes, being a joint and several judgment. [Secs. 1160, 1522, 1528, R. S. Mo. 1919; State ex rel. v. Blakemore, 275 Mo. 1. c. 702; Sec. 1263, R. S. Okla. 1910; Levy v. Bank, 188 Pac. 1. c. 1078.] Moreover, the amount of each defendant's liability being definitely fixed by the judgment, and the amount of each defendant's liability being greater than the total sum of the judgment rendered, the rights of no one of the defendants can be prejudiced by a judgment in this form.

V. The final complaint of appellants is against the allowance of six per cent interest per annum on the judgment from February 1, 1921, the date of the rendition of the Oklahoma judgment. Here again, is presented a question which was not properly raised in the trial court, either in the motions for new trial or in arrest of judgment, and, therefore, not properly reviewable here. [Sec. 1512, R. S. 1919.] However, this court has held that, in suits on foreign judgments and in the absence of proof as to the law of interest in the foreign state involved, interest should be allowed, as provided by the law of interest of this State, from the date of the rendition of the judgment in the foreign State. [Sec. 6493, R. S. 1919; Shickle v. Watts, 94 Mo. 1. c. 420, citing cases to the same effect in other states.]

In accordance with our findings and conclusions as to all errors assigned by appellants and as to all questions properly presented for our consideration, the judgment of the trial court should be affirmed. It is so ordered. *Higbee* and *Davis, CC.*, concur.

PER CURIAM:—The foregoing opinion of HENWOOD, C., is adopted as the decision of the court. All of the judges concur.