## THE LINN WOOLEN COMPANY *vs.* C. O. BROWN.

### Somerset.   Opinion December 20, 1912.

*Consent. Covenant. Forfeiture. Gist of action. Lease. Possession. Rent. Surrender. Sublease. Trespass quare Clausum. Voidable. Waiver.*

In an action of trespass quare clausum brought by the owner and lessor of certain land, water power and buildings against a sublessee of a portion thereof.

*Held:*

1. That the gist of the action is the injury to the possessory right, and the plaintiff cannot maintain the suit unless it was in possession at the time of the alleged trespass.

2.  That as the original lease contained a covenant that the lessee, Page, should not assign or underlet the premises or any part thereof, without the consent of the lessor in writing on the back of the lease, the act of the lessee in subletting a portion to the defendant without such consent was without authority, and rendered the sublease voidable at the option of the plaintiff, but not void.

3.  That under the further covenant in the original lease providing that the lessor might enter to expel the lessee if he should violate any of the covenants in the lease, the plaintiff could have availed itself of this privilege and could have treated the lease as at an end or it could waive the privilege and treat the lease as still subsisting.

4.  That the evidence in this case clearly shows that the plaintiff waived this ground of forfeiture and recognized the continued existence of the original lease.

5.  That even if the facts warranted a re-entry for failure to pay rent, which is very doubtful, there was no re-entry in fact.

6.  That the alleged surrender of the premises by Page to the lessor was apparent rather than real, and gave the plaintiff no rights.

7.  That the possession of Page, the original lessee, was not actually disturbed until the very day on which this writ was brought.

8.  That as the original lease was in full force until that date, the defendant's estate existing under it continued according to the terms of its creation. The defendant was rightfully in possession unless the plaintiff saw fit to assert its rights in a legal way, and this it did not do.

On report. Judgment for defendant.

This is an action of trespass quare clausum, brought by the plaintiff, owner of the saw-mill and novelty-mill situated on Sebasticook river in Hartland village, in the county of Somerset. The plaintiff, on June 7, 1909, leased all this property to Ira W. Page, Jr., for seven years at an annual rental of four hundred dollars, payable quarterly. The lease to Page contained a covenant that the lessee should not sublet the premises, or any part thereof, without the consent of the lessor in writing on the back of the lease, and also provided that the lessor might enter to expel the lessee if he should fail to pay the rent. On the 14th day of September, 1910, Page, without the consent in writing, sublet the saw-mill and machinery and a portion of the yard to the defendant for one year, and he entered into possession and occupancy of the premises. Plea, general issue with brief statement justifying under his lease.

The case is stated in the opinion.

*J. H. Haley, and George H. Morse,* for plaintiff.
*Merrill & Merrill,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, JJ.

CORNISH, J.  This is an action of trespass quare clausum.

The plaintiff corporation is the owner of two large woolen mills situated on what is known as the lower dam across the Sebasticook river in Hartland village.  It is also the owner of a dam situated about one-half mile further up the river, known as the upper dam, on which is a saw-mill and connected with which are a piling-ground, yard and a novelty-mill, all constituting what is known as the Moore property.

On June 7, 1909, the plaintiff leased all this upper estate to Ira W. Page, Jr., for seven years at an annual rental of $400, payable quarterly.  The lease contained a covenant that the lessee should not assign or underlet the premises, or any part thereof, without the consent of the lessor in writing on the back of the lease, and also provided that the lessor might enter to expel the lessee if he should fail to pay the rent, whether demanded or not, or if he should violate any of the covenants in the lease.

Page went into possession of the property and operated the novelty-mill, but it does not appear whether he ever operated the saw-mill or not.

On September 14, 1910, he sublet a portion of the premises, consisting of the saw-mill and machinery and a certain portion of the yard, to the defendant for the term of one year from November 14, 1910, at a rental of $400 a year, payable quarterly.  This sub-letting was without the written consent of the plaintiff and it appears that the defendant at the time he took this sub-lease had knowledge of the covenants in the original lease and said he would take his chances.  During the following spring and summer there was more or less complaint on the part of the plaintiff of the manner in which the defendant was handling the water at the upper dam, the result being, as the plaintiff claims, that the work at its woolen mills was seriously interfered with.

The plaintiff contends that it did not know that the defendant was a sub-lessee until about the first of June, 1911, having assumed up to that time that he was merely foreman for Page, the lessee, that it took advantage of Page's failure to make his quarterly payment of rent on June 17, 1911, to claim a forfeiture, that on July 14, 1911, it gave Page a written notice to quit the premises at the expiration of thirty days from July 17, or on August 16, 1911, that on July 16, or 17, Page voluntarily surrendered the premises to the plaintiff, but defendant continued to operate the saw-mill until the 28th of August when a deputy sheriff acting for the plaintiff boarded it up and prevented further occupation. On the same day, August 28, 1911, this action of trespass quare clausum was brought, claiming damages from November 14, 1910, the date when the defendant entered into possession under his sub-lease.

At the trial, the jury made a special finding of fact, to the effect that the plaintiff knew on February 12, 1911, of the lease of the saw-mill from Page to Brown, and with that finding the case was reported to the Law Court for final determination.

The rights of the parties depend upon certain well-settled principles of law, somewhat technical in their nature and yet resting on reason as well as authority. A logical treatment of the case works out as follows:

This being an action of trespass quare clausum, the gist of the action is the injury to the possessory right, and the plaintiff cannot maintain the suit unless it was in possession at the time of the alleged trespass. If a tenant was in possession, the plaintiff as landlord cannot prevail, except in case of permanent injury to the freehold. *Moody* v. *King,* 74 Maine, 497; *Perry* v. *Bailey,* 94 Maine, 50. Such permanent injury is not claimed here.

It follows, therefore, that if the lease to Page was in force when this suit was brought, he and not the plaintiff would be the party entitled to bring an action of trespass, and Page could not bring it because the defendant was in possession under a sub-lease from him. He certainly could not treat his own lessee as a trespasser.

Now the lease to Page did not expire by its terms until June 7, 1916, and it was still in force unless it had been forfeited and the plaintiff had entered for breach of covenant and was in possession.

What is the legal situation on this point?

It cannot be disputed that in the first instance Page had no legal·right to sub-let a portion to Brown without the consent of the lessor in writing on the back of the lease, but his act in doing so rendered the lease voidable at the option of the plaintiff and not void. The plaintiff could avail itself of the privilege, and treat the lease as at an end, and re-enter for covenant broken, if it saw fit, or it could waive this privilege and treat the lease as still subsisting. Dumpors case, 4 Coke, 119, 1 Smith Lead. Cas. and note; *Webster* v. *Nichols,* 104 Ill., 160; *Shattuch* v. *Lovejoy,* 8 Gray, 204; *Porter* v. *Merrill,* 124 Mass., 534; and see *Small* v. *Clark,* 97 Maine, 304.

Waiver is a question of fact, and it is clear that the plaintiff waived this forfeiture.

All the circumstances combine to prove it. The defendant went into possession of the saw-mill and made repairs upon it in November, 1910, and the evidence fairly leads us to believe that Mr. Linn, the treasurer and managing director of the plaintiff corporation, must have known the fact, especially as the defendant had previously talked with Mr. Heinze, the plaintiff's superintendent, in regard to leasing it.

But the jury have found specially that the plaintiff knew of the sub-lease on February 12, 1911, by reason of a conversation that took place on that day between Mr. Linn and the defendant; and the evidence warrants the finding. Yet the plaintiff took no steps to regain possession of the property. It virtually recognized Brown as the party in possession of the saw-mill property. It complained to him, not to Page, of his manner of using the water. It purchased from him lumber sawed out in the mill to the amount of $160 and gave him credit therefor on its books. There is evidence to the effect that it sent Page to learn from Brown on what terms he would surrender his rights. In short, having knowledge of the sub-lease, it treated the sub-lessee as the party rightly in possession of the portion under that sub-lease.

Moreover, it continued to treat its lease with Page as still subsisting. It made no move to the contrary and on April 14, 1911, it assigned to Geo. M. Lancey its charge for rent from March 7, 1910, to March 7, 1911, which at that time remained unpaid, thereby

recognizing the tenancy of Page up to March 7, 1911, for on no other basis could the rent be due.

The proof of waiver of the breach of covenant for sub-letting is abundant, and when asked on cross-examination what covenant he relied upon when he gave the notice to quit on July 14, 1911, Mr. Linn replied "on account of his forfeiture to pay rent."

The plaintiff therefore cannot successfully rely in this action upon the breach of covenant against sub-letting because it never availed itself of its rights thereunder.

This brings us to the alleged re-entry for non-payment of rent.

On March 7, 1911, four quarters remained unpaid, and it was then the right of the plaintiff, as it had been at the expiration of each of the preceding quarters, to enter for breach of covenant, without making previous demand, it being so specified in the lease. But no such step was taken, and more than one month later, namely, on April 14, 1911, two days after Brown began his season's sawing, as has already been stated, it assigned the bill against Page for the year's rent to George M. Lancey. This was as effective a recognition of Page's tenancy to March 7, 1911, as if the plaintiff had received the money therefor from Page. And the acceptance of rent by the owner from either lessee or sub-lessee, after knowledge of the fact, is regarded as strong if not conclusive evidence of waiver. *Dendy* v. *Nicholl*, 4 C. B. N. S., 376; *The Hartford Wheel Club* v. *Travellers Ins. Co.*, 78 Conn., 355; *Murray* v. *Harway*, 56 N. Y., 337. Page's possession up to March 7 is therefore secure.

The next quarter day fell on June 7. It appears that within a day or two prior to June 7, Page went into the plaintiff's office and finding Linn and Heinze there, asked them if they would accept Brown's order for $100 for the rent falling due on that date as the Company then owed Brown $160 for lumber bought of him. Mr. Heinze replied that he thought there would be no doubt but that they would accept it. On the strength of that promise, Brown gave Page the order on June 10, and Page took it to the plaintiff; but the plaintiff refused to accept it, not, however, on the ground that it had not been paid on the exact quarter day. Under these circumstances, we think the court should be slow to declare that there had been a breach of covenant for non-payment of rent, the

money on the 7th of June being in the plaintiff's hands, due primarily to Brown and by him on the 10th ordered to be retained by the plaintiff in payment of the Page rent, in accordance with the previous arrangement. Forfeiture is not a favorite with the law, and under circumstances like these we decline to recognize it.

But even if there was a breach which gave the plaintiff a right of re-entry, it was not availed of by the plaintiff. The defendant was still in the occupation and operation of the saw-mill with its appurtenances; and Page in the occupation and operation of the novelty-mill. This continued until July 14, when the plaintiff served a written notice upon Page "to quit and deliver up to me at the expiration of thirty days from July 17, 1911, the possession of the following described premises now occupied by you and belonging to me," etc. Then follows a description of the entire property covered by the original lease. This notice does not claim any possession by virtue of forfeiture, but on the contrary, by its very terms, concedes the possession to be then in Page, and asks him to surrender it, for no stated reason, on August 16.

Two or three days later, Linn appeared upon the premises and Page, in his presence at the novelty-mill and in the presence also of Brown at the saw-mill, said that he surrendered and forfeited all claims that he had upon the property to the Linn Woolen Co. Linn then ordered the defendant to "vacate," and the defendant replied "very well;" and Linn said "vacate at once," and the defendant answered, "that is impossible." It is apparent that some arrangement had been made by the plaintiff with Page to go through this farcical performance in order to get rid of Brown, so that Page could retain the novelty-mill and the plaintiff regain possession of the saw-mill. This is shown by the new lease given by the plaintiff to Page on August 17, 1911, covering the novelty-mill alone.

There was no real intention on Page's part to surrender the whole property. In fact, he never did surrender it, for he continued to occupy the novelty-mill the same after this declaration as before, and Brown continued to occupy the saw-mill. When the notice to quit expired on August 16, the situation remained the same. A notice to quit does not of itself change possession, and

there was no change here and no bona fide re-entry until August 28, when the saw-mill was boarded up and the defendant practically evicted.

On the evening of that day this writ was brought.

Page's right of possession therefore was not actually disturbed under the original lease until August 28, 1911, and trespass could not have been maintained against him before that time.

So much for Page's right under the lease.

What of the defendant's, under his sub-lease? It is this: As the lease subsisted until that time in full force, the defendant's estate existing under it continued according to the terms of its creation. *Shumway* v. *Collins,* 6 Gray, 227-230.

The defendant was not a disseizor. He was rightfully in possession, unless the original lessor saw fit to assert his legal rights in a legal way. Whether this was done on August 28 might well be questioned, but certainly it was not done at any time prior to that, and therefore the defendant was not a trespasser at the date of the writ, and had not been previous thereto.

*Judgment for defendant.*