## CHILSON v. CAVANAGH.

No. 7851—Opinion Filed Oct. 17, 1916.

(160 Pac. 601.)

**1. Corporations—Stockholders—Liability.**

By section 39, art. 9, of the Constitution, providing that "No corporation shall issue stock except for money, labor done, or property actually received to the amount of the

par value thereof, .* * *" it is intended that a corporation shall receive, and the shareholder to whom the same is issued shall pay and be bound for the full par value of its stock, in this manner making the assets of the corporation worth the face value of its shares of stock when issued. The liability thus imposed upon one who, by accepting corporate stock, as an original shareholder, obligated himself to pay the corporation therefor in money, labor done, or property, is not discharged, at least so far as creditors of the corporation in good faith are concerned, by the mere transfer of such stock to an innocent holder. It is the duty of the courts to construe and enforce this provision of the Constitution so as to render it effectively remedial of the evil against which it is directed.

**2. Landlord and Tenant—Lease—Construction—Sublease.**

A clause in a lease restricting the right of the lessee to assign or sublet the premises is for the benefit of the lessor, and can be set up alone by him.

**3. Corporations — Stockholders—Liability — Pleading.**

Petition examined, and held not to state a cause of action.

(Syllabus by Bleakmore, C.)

Error from District Court, Pittsburg County; R. W. Higgins, Judge.

Action by Frank M. Chilson, trustee in bankruptcy of the Alderson Coal Company, against J. E. Cavanagh. Judgment sustaining a demurrer to the petition, and plaintiff brings error. Affirmed.

Wm. H. Fuller and George M. Porter, for plaintiff in error.

Gordon & McInnis, for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the superior court of Pittsburg county by Frank M. Chilson, trustee in bankruptcy, of the Alderson Coal Company, seeking to recover judgment against J. E. Cavanagh, an original stockholder of said company, for a portion of the alleged unpaid amount of the par value of certain shares of its capital stock, in the sum of $4,297.28 and interest, being the difference between the total assets and liabilities of the bankrupt company. Demurrer to the petition was sustained, and plaintiff has appealed.

By the petition it is alleged, in substance, that the Alderson Coal Company was a corporation, organized under the laws of this state, for the purpose of leasing and owning coal lands and mining coal, etc.; that defendant Cavanagh was the owner of an undivided one-half interest in a certain coal mining lease held by him under the Indian Coal & Mining Company, by the terms of which he was to produce coal from said lease, and pay a stipulated royalty therefor, which lease contained a covenant against its assignment without the consent of the lessor; that on September 1, 1910, defendant proposed to the Alderson Coal Company to exchange his interest in said lease, properly transferred, for 305 shares of its capital stock, of the par value of $15,250, full paid up and nonassessable; that at a meeting of the directors of the Alderson Coal Company held on September 3, 1910, said proposition was duly accepted by said company, and its president and secretary empowered to accept the assignment of such lease, and to issue to defendant such shares of its capital stock; that on the same day defendant, in writing, upon the back thereof, assigned his interest in said lease to the Alderson Coal Company, and received in exchange therefor 305 shares of its capital stock, of the par value of $15,250; that the Indian Coal & Mining Company had no knowledge of the existence of the Alderson Coal Company, or of said transaction; that long thereafter, in April, 1911, the Indian Coal & Mining Company conditionally consented to such assignment of said lease, on the back thereof, by the following indorsement:

"Approval of Transfer.

"The above and foregoing assignment of the within lease from J. E. Cavanagh to F. J. McFarland, and from McFarland and J. E. Cavanagh to the Alderson Coal Company, of Alderson, Okla., is hereby consented to and approved, conditioned that the Alderson Coal Company execute and maintain in favor of the Indian Coal & Mining Company, a ten thousand dollar security bond, conditioned for the faithful performance of the terms of the said lease by the Alderson Coal Company, and upon failure to give and maintain such bond the consent hereby given to said transfer and assignment may be withdrawn, and the said J. E. Cavanagh shall be held bound according to the original lease.

"Done this 14th day of April, 1911. Indian Coal & Mining Company, by C. R. Craig, Vice President. Attest: J. A. Nichols, Secretary. [Seal.]"

That no bond was ever executed by the Alderson Coal Company, and that no other or further consent of the Indian Coal & Mining Company to such assignment was ever given, and possession of the property covered by said lease was never obtained by the Alderson Coal Company with the knowledge or consent of the Indian Coal & Mining Company; that the pretended assignment of said lease to the Alderson Coal Company was void, and by reason thereof said company never acquired any interest in said lease, of the value of $15,250, or any other sum; that

said company did not receive from defendant, or other persons, any money, labor done, or property of any kind, for said shares of its stock, and had not received back said stock; that if the pretended assignment of the interest of defendant in said lease had been consented to and approved by the Indian Coal & Mining Company, the Alderson Coal Company would have thereby obtained and had a valuable asset, worth approximately $15,000, out of which the plaintiff, as trustee in bankruptcy, could have realized sufficient funds to pay its creditors in full; "that defendant herein received and had issued to him stock of the Alderson Coal Company in the amount of 305 shares of the capital stock of said company at $50 per share," of the par value of $15,250, without any consideration whatever being paid therefor to the Alderson Coal Company."

It will be noted that it is not specifically alleged, and plaintiff does not in his brief insist, that defendant was the owner or holder of said stock of the Alderson Coal Company at the commencement of this action; but recovery is sought by reason of the original issue of the shares to him. By section 1263, Rev. Laws 1910, it is provided:

"Each stockholder of a corporation is individually and personally liable for the debts of the corporation to the extent of the amount that is unpaid upon the stock held by him. Any creditor of the corporation may institute joint or several actions against any of its stockholders that have not wholly paid for the capital stock held by him, and in such action the court must ascertain the amount that is unpaid upon the stock held by each stockholder and for which he is liable, and several judgment must be rendered against each in conformity therewith. The liability of each stockholder is determined by the amount unpaid upon the stock or shares owned by him at the time such action is commenced, and such liability is not released by any subsequent transfer of stock. And in no other case shall the stockholders be individually and personally liable for the debts of the corporation. The term 'stockholder,' as used in this section, shall apply not only to such persons as appear by the books of the corporation to be such, but also to every equitable owner of stock, although the same appear on the books in the name of another."

In aid of this contention that, notwithstanding the statute, supra, defendant is liable to the creditors of the bankrupt corporation, plaintiff invokes the provisions of section 30, art. 9, of our Constitution (section 256, Williams' Annotated Construction), viz.:

"No corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof, and all fictitious increase of stock or indebtedness shall be void, and the Legislature shall prescribe the necessary regulations to prevent the issue of fictitious stock or indebtedness."

In Webster v. Webster Refining Company, 36 Okla. 168, 128 Pac. 261, 47 L. R. A. (N. S.) 697, construing the foregoing section of the Constitution, this court, in an opinion by Judge Ames, said:

"The evil which this constitutional provision was designed to stop was the so-called practice of watering stock of a corporation; and it is both our duty and our disposition to give this statute its natural construction ---the meaning which its words plainly disclose. The corporation is prohibited from issuing stock except for money, for labor done, or for property actually received to the amount of the par value thereof. These words have a very plain significance. They mean just what they say."

The manifest purpose of the framers of our Constitution was to protect the public against the well-known, deceitful, and fraudulent practice indulged by some corporations of issuing shares of capital stock without receiving the par value therefor either in money or its equivalent. Obviously it was intended by the section quoted to provide that a corporation should receive, and the shareholders to whom the same was issued should be bound for the full par value of its stock, thus making the assets of the corporation worth the face value of its shares of stock, when issued. The liability thus imposed upon one who, by accepting corporate stock, as an original shareholder, obligates himself to pay the corporation therefor in money, labor done, or property is a continuing one, at least so far as the creditors of the corporation in good faith are concerned, and is not discharged by the mere transfer of such stock to an innocent holder; otherwise one who had contributed little or nothing to the capital stock to a corporation might obtain shares of its stock, dispose thereof profitably, and entirely escape liability to corporate creditors. It is the plain duty of the courts to construe and enforce this provision so as to render it effectively remedial of the evil against which it is directed.

The Texas Constitution contains a provision in language almost identical with that of section 39, art. 9, of the Oklahoma Constitution. In construing such provision, in an action by a creditor of an insolvent corporation against a stockholder, the Supreme Court of that state held:

"One receiving stock in a corporation for a consideration forbidden by the Constitution, is liable to its creditors for the face value of his shares."

—and in the body of the opinion it is said:

"Section 6, art. 12, of our state Constitution is in this language: 'No corporation shall issue stock or bonds except for money paid, labor done, or property actually received.' The purpose of the convention in enacting that provision of the Constitution was to secure creditors as well as stockholders of corporations against the practice, which was too common, of corporations issuing fictitious stock and stock upon an insufficient consideration, whereby the actual capital was much less than the amount represented by the shares issued and sold by the corporation. The terms in which this section of the Constitution is expressed indicates the purpose that the assets of the corporation should be something substantial, and of such a character that they could be subjected, to the payment of claims against the corporation as well as to secure the shareholders in their rights in the capital stock." O'Bear-Nester Glass Co. v. Antiexplo Co., 101 Tex. 431, 108 S. W. 967, 109 S. W. 931, 16 L. R. A. (N. S.) 520.

See, also, Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015.

The Constitution of Missouri, 1875, contains a similar provision. In Van Cleve v. Berkey, 143 Mo. 109, 44 S. W. 743, 42 L. R. A. 593, it is said by the Supreme Court of that state:

"Upon a review of all the cases decided by the appellate courts of this state since the adoption of the Constitution of 1875, the rulings in all of which will be found to be in harmony, it is impossible to escape the conviction that in this state, whatever may be the case in some of the other states, the 'American trust doctrine,' as suggested by Mr. Justice Harlan, has indeed been reinforced by its Constitution and statutes, and that the proposition that the stock of a corporation must be paid for 'in meal or in malt,' in money or in money's value, is not a mere figure of speech, but really has the significance of its terms; it may be paid for in property, but in such case the property must be the fair equivalent in value to the par value of the stock issued therefor; that it is the duty of the stockholders to see that it possesses such value; that when a corporation is sent forth into the commercial world, accredited by them as possessed of a capital in money, or its equivalent in property, equal to the par value of its capital stock, every person dealing with it, unless otherwise advised, has a right to extend credit to it on the faith of the fact that its capital stock has been so paid for, and that the money, or its equivalent in property, will be forthcoming to respond to their legitimate demands; in short that it is the duty of the stockholder, and not of the creditor, to see that it is so paid."

See, also, Scoville v. Thayer, 105 U. S. 143,

26 L. Ed. 968; Fogg v. Blair, 139 U. S. 118, 11 Sup. Ct. 476, 35 L. Ed. 104.

The proposal of the defendant was that in exchange for the 305 shares of stock to be issued, fully paid up and nonassessable, he would transfer to the Alderson Coal Company his undivided one-half interest in the lease.

It is alleged that, although the 305 shares of stock were issued and delivered to him, the attempted assignment of his interest in said lease did not operate to transfer the same, for the reason that the consent of the Indian Coal & Mining Company thereto was not obtained, and therefore the Alderson Coal Company received, and the defendant parted with, nothing on account of the issuance of such stock. The lease from the Indian Coal & Mining Company, his interest in which defendant assigned, provides:

"That they [defendant] will not at any time during the term hereby granted, assign, transfer or sublet their interest in said lease without the consent of party of the first part," and, "it is further agreed that, should the party of the second part violate any of the covenants of this lease, or fail for the period of thirty days to pay the stipulated monthly payment, royalty provided for herein, then the party of the first part, shall be at liberty, in their discretion, to avoid this indenture of lease, and cause the same to be annulled, when all the rights, franchises and privileges of party of the second part shall cease, and end without further proceedings."

It will be observed, by the terms of the lease, supra, it was not contemplated that the mere assignment thereof by Cavanagh, without the consent of the Indian Coal & Mining Company, should, ipso facto, avoid the same and forfeit the rights of all parties thereunder; but, on the other hand, it was expressly provided that in the event of such assignment, the lease might be avoided alone at the instance and in the discretion of the lessor. It is not alleged that the Indian Coal & Mining Company exercised its right to so avoid the lease, but on the contrary, it is specifically alleged that it did consent to the assignment as made by Cavanagh upon condition that the Alderson Coal Company execute and maintain a bond, and that upon the failure to give and maintain such bond, the consent so given might be withdrawn and Cavanagh held according to the terms of the lease. It thus appears that the required consent was in fact given, subject to the power of the lessor to withdraw same and hold Cavanagh personally liable. That such consent was ever in fact withdrawn or that the Indian Coal & Mining Company took any steps looking to the forfeiture of said lease,

is not pleaded. In Jones v. Moncrief-Cook Co., 25 Okla. 856, 108 Pac. 403, it is held:

"The lessor may waive a breach of the restriction against the assignment or subletting imposed by the terms of the lease, in which event the matter stands as if the lessor had given his consent to the assignment or underletting.

"(a) A clause in a lease, restricting the right of the lessee to assign or sublet the premises, is for the benefit of the lessor, and can be set up alone by him."

In Holman v. De Lin, etc., 30 Ore. 428, 47 Pac. 708, it is said:

"It is argued that, as the lease contains covenants against an assignment or a subletting by the lessees without the consent of the lessors, it was rendered void by reason of the assignment and the occupancy by the defendant company under De Lin; but these covenants were made for the benefit of the lessors, and it was incumbent upon them to re-enter in order to terminate the lease or revest the estate in them. * * * It is not shown that they did this, and hence were not revested of their old estate."

See, also, Linn Woolen Co. v. Brown, 110 Me. 88, 85 Atl. 404; Attachment Company v. Sewing Machine Co., 33 Ill. App. 362; Id., 25 N. E. 669; Jones on Landlord & Tenant, sec. 495. In Garcia v. Gunn, 119 Cal. 315, 51 Pac. 684, it is said:

"It seems to be the law that where there is a clause in the lease that it shall not be assigned without the previous consent of the lessor, and there is a breach of the covenant not to assign, the lessor has only the option to forfeit the lease for breach of the condition, and that the assignment is not void, but passes the term, and the only remedy is for breach of the covenant."

"After such a breach the lessor has only the option of forfeiting the lease for breach of condition, and he has not the option of declaring the assignment void." Jones, Landlord & Tenant, sec. 495.

See, also, Tiffany on Landlord and Tenant, sec. 152, subd. "J."

In our opinion it cannot be successfully maintained that the Alderson Coal & Mining Company issued, and defendant accepted, its stock in violation of the provisions of section 39, art. 9, of the Constitution, for as between it and defendant the assignment of said lease was duly accepted, was valid, and operated to pass the term; and it is specifically averred that the interest of defendant in such lease was in fact of the approximate value of the stock received by him in exchange therefor. The Indian Coal & Mining Company alone was authorized to declare a forfeiture and avoid the lease for breach of the covenant not to assign same without its

consent; and in the light of the facts alleged it must be held that neither the Alderson Coal Company, nor the plaintiff as trustee in bankruptcy, may set up the breach of such covenant in avoidance of the lease.

It follows that the demurrer was properly sustained, and the judgment of the trial court should be affirmed.

By the Court: It is so ordered.