Terry NICHOLS, Doneta Nichols, Terry Brett Nichols, Quinton Dale Nichols, and Tyler Danton Wayne Kauk, a minor, by and through his father and next friend, Tony Edwin Kauk, Appellants (Counter–Appellees)/Plaintiffs,

v.

MID–CONTINENT PIPE LINE COMPANY, Appellee (Counter–Appellant)/Defendant.

No. 84130.

Supreme Court of Oklahoma.

Oct. 15, 1996.

Rehearing Denied Dec. 19, 1996.

Allan DeVore and Marjorie Ramana, The DeVore Law Firm, Oklahoma City, Douglas E. Burns, Oklahoma City, for appellants.

Jessie V. Pilgrim, Tulsa, for appellees.

OPALA, Justice.

The issues presented on certiorari are: (1) Are the plaintiffs within the class of claim-

ants who may maintain a common-law action to recover on a nuisance theory? (2) Was it an abuse of discretion for the trial court to admit evidence about the plaintiff's medical condition? (3) Was it reversible error to admit, during the punitive-damages stage of the trial, evidence of the financial condition of a defendant's (Mid–Continent Pipeline Company's [Mid–Continent]) parent corporation? (4) Was the trial court's refusal to declare a mistrial for intemperate remarks by plaintiffs' counsel reversible error? (5) Did the trial court correctly apply the Barrett settlement proceeds by reducing the jury's punitive-damages award? We answer the first question in the affirmative and the remaining queries in the negative.

I

**THE ANATOMY OF LITIGATION**

In late 1990 Terry Nichols, one of the plaintiffs, agreed with Jerry Myers to sublease the Barnes ranch—a 1300–acre tract of land in Dewey County—and took possession of it.[1] He and members of his family [collectively the *plaintiffs* ] then moved their cattle onto this property. Soon after that, the plaintiffs' stock began experiencing various physical anomalies.[2] One of the veterinarians who was consulted suggested that the cattle's problems might be causally related to ingestion of hydrocarbons.

In January 1992 Nichols discovered that earlier buried substances from an Exxon Corporation [Exxon] reserve pit [used in drilling activities conducted on the Barnes ranch] had risen to the surface and that the plaintiffs' cattle were ingesting them. In February 1992 Nichols also discovered a leak in Barrett Pipeline Company's [Barrett] oil

pipeline in an area where the plaintiffs' cattle had been grazing. Mid–Continent had sold to Barrett (in July 1991) the oil gathering system, which included the leaking pipeline in issue.

In early 1993 the plaintiffs brought an action (based on negligence and nuisance) for damages to their cattle and also for harm ( by the defendants' pollution) to their possessory interest in the Barnes ranch.[3] Barrett, who settled with the plaintiffs for $100,000[4], was dismissed from the action before trial, but its fault as a third party (nonparty) on the negligence-related claim was nonetheless tendered for the jury's assessment. Barrett's liability on the nuisance claim was not submitted for the trier's consideration.

After a bifurcated trial—the first phase to settle liability, the other to assess punitive damages—the jury (1) *assessed comparative fault* for the negligent injury to plaintiffs' cattle by allocating 10% of the $100,000 awarded in damages to the plaintiffs, 35% (or $35,000 in damages) to Exxon and 55% (or $55,000 in damages) to Mid–Continent; (2) *completely exonerated Barrett* of liability for harm to the cattle; (3) *determined* that Mid–Continent was *solely* liable on the nuisance claim in the amount of $150,000; and (4) *assessed a $250,000 punitive-damages award against Mid–Continent alone.*

At the conclusion of phase I, the court credited Exxon and Mid–Continent each with $50,000 of the Barrett settlement proceeds and reduced accordingly their respective proportionate liability (on the jury awards). When phase II came to be concluded, the trial court reduced the punitive-damages award against Mid–Continent from $250,000 to $155,000,[5] the amount of the *diminished* recovery for actual damages. The plaintiffs sought corrective relief from the manner in which the trial judge applied the Barrett settlement proceeds, and Mid–Continent and

1. It is undisputed that neither Terry Nichols nor his family lived on the Barnes ranch.

2. The cows experienced prolapses, aborted or had premature calves, demonstrated weight loss and/or died. Tr. trans. pp. 1464–66.

3. It is uncontroverted that (a) in the original Myers' lease of the Barnes ranch the lessors (trustees) reserved the right to approve any subleases and (b) the trustees never gave their approval for the Nichols sublease.

4. Under the Barrett settlement's terms the plaintiffs were to receive $100,000—$50,000 in cash

and the balance in the form of an unsecured note. After settlement Barrett declared bankruptcy.

5. The trial court granted credit (to each of the two affected defendants—Mid-Continent and Exxon) of one-half of the Barrett settlement proceeds ($50,000) against the negligence-related damages award. The net effect of the nisi prius action was to reduce the compensatory damages due from Exxon to –0– and those due from Mid–Continent to $155,000 ($5,000 for negligence and

Exxon appealed from the adverse judgment. *Exxon settled with the plaintiffs before the cause was reached on appeal.* Although sustaining the judgment, the Court of Appeals *reversed* the trial court's use of the Barrett settlement proceeds to *reduce* punitive-damages award, holding that the plaintiffs were entitled to the full amount ($250,-000) awarded by the jury.

*Mid–Continent alone sought certiorari.*

## II

### PLAINTIFFS' NUISANCE CLAIM LIES FOR THE HARM OCCASIONED TO THEIR POSSESSORY INTEREST IN THE BARNES RANCH

■ The statutory definition of *nuisance*—in 50 O.S.1991 §§ 1 *et seq.*[6]—encompasses the common law's *private and public* nuisance concepts.[7] It abrogates neither action.[8] *Common-law nuisance*—a field of tort-like liability which allows recovery of damages for wrongful interference with the use or enjoyment of rights or interests in land[9]—*affords the means of recovery for damage incidental to the land possessor's person or chattel.*[10]

■ Mid–Continent, which characterizes the *plaintiffs as trespassers* on the Barnes Ranch, denies that they possess any rights (or interests) in the land. While there might be a legal question about the validity of the plaintiffs' sublease [an issue we need not reach today],[11] the record amply demonstrates the plaintiffs were in actual posses-

---

$150,000 for nuisance). The reduced amount of actual damages was then used by the trial court as the 23 O.S.1991 § 9 cap on the amount of the allowable punitive damages. [For the pertinent terms of § 9, see *infra* note 30.]

6. The pertinent terms of 50 O.S.1991 § 1 are:

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or

\* \* \* \* \* \*

Fourth. In any way renders other persons insecure in life, or in the use of property...."
The pertinent terms of 50 O.S.1991 § 2 are:
"A *public nuisance* is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal." [Emphasis added.]
The pertinent terms of 50 O.S.1991 § 3 are:
"Every nuisance not included in the definition of the last section is *private*." [Emphasis added.]

7. For a discussion of the history of common-law nuisance, see Bradford A. Wyche, *A Guide To The Common Law Of Nuisance In South Carolina*, 45 S.C. L. Rev. 337, 339–41 (1993).

8. By force of 12 O.S.1991 § 2 *the common law remains in full force unless a statute explicitly provides to the contrary.* Its relevant terms are:

"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma...."
The common law's legislative abrogation may not be effected by mere *implication*. *Tate v. Browning–Ferris, Inc.*, Okl., 833 P.2d 1218, 1225–26 (1992); *Silver v. Slusher*, Okl., 770 P.2d 878, 884 (1989); *Ricks Exploration Co. v. Okl. Water Resources Bd.*, Okl., 695 P.2d 498, 504 (1985); *Roxana Petroleum Co. v. Cope*, 132 Okl. 152, 269 P. 1084, 1085 (1928) (the court's syllabus ¶ 3); *Reaves v. Reaves*, 15 Okl. 240, 82 P. 490, 495 (1905); *State Mut. Life Assur. Co. of Amer. v. Hampton*, Okl., 696 P.2d 1027, 1034, 1036 (1985) (Opala, J., concurring). It must be clearly and plainly expressed. *Fuller v. Odom*, Okl., 741 P.2d 449, 451 (1987); *McCormack v. Oklahoma Publ. Co.*, Okl., 613 P.2d 737, 740 (1980). A presumption favors the preservation of common-law rights. In this State's legal system the common law forms "a dynamic and growing" body of rules that changes with the conditions of society. *Wright v. Grove Sun Newspaper Co., Inc.*, Okl., 873 P.2d 983, 987 (1994); *Brigance v. Velvet Dove Restaurant, Inc.*, Okl., 725 P.2d 300, 303 (1986).

9. *See* Restatement (Second) of Torts, § 821D cmt. a (1977); *see also* Restatement of Torts Ch. 40 pp. 215–225 (1939); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 86, at 616–618, and § 87, at 619, 621–622 (1984); R.F.V. Heuston, Salmond on the Law of Torts § 22, at 83–84 (1965).

10. Restatement (Second) of Torts § 821D, cmt. a (1977); Restatement of Torts ch. 40, at 218 (1939).

11. *See supra* note 3 for this purported problem's genesis.

sion [12] of this acreage. *A stranger to both the privity of estate and of contract—one other than the lessor—* is barred from interposing as a defense a lessee's breach of a provision that restricts lessee's right to sublet without lessor's approval.[13]

■ Mid–Continent's status is that of a *tortfeasor.* The trustees of the Barnes Ranch, *the lessors,* never sought re-entry (or otherwise attempted to interfere with the plaintiffs' possession of the leased premises) at any time before the acts in this litigation had occurred. The trial court's ruling that the plaintiffs—as possessors of the land [14] fall within the class of claimants who may bring an action for private nuisance is hence legally correct.

■ We adopt today the national common-law norms found in the RESTATEMENT (SECOND) OF TORTS § 821D [15] as harmonious with this State's extant jurisprudence.[16] Both clearly allow a private nuisance claimant to recover for *personal harm,* inconvenience and annoyance incidental to another's

interference with the possessory interest in land. There was hence no error in admitting evidence of those physical conditions suffered by Terry Nichols, which had a medically established nexus to the claimed injury.

## III

## THE ADMISSION OF EVIDENCE SHOWING SUN COMPANY'S (MID–CONTINENT'S PARENT CORPORATION) FINANCIAL CONDITION, IF IN ERROR, WAS HARMLESS [17]

■ During the punitive-damages phase of the trial the plaintiffs sought to introduce evidence of Sun Company's [Sun] financial condition. Mid–Continent—a wholly owned subsidiary of Sun—objected. The trial judge ruled that there was an identity (between Mid–Continent and Sun) sufficient to permit the proof's admission.[18] This mid-trial ruling rests on competent evidence in the record, which supports the notion of Mid–Continent's

**12.** The RESTATEMENT (SECOND) OF TORTS § 328E (1965) defines "possessor of land" as:
   "(a) a person who is in occupation of the land with intent to control it...."
   The RESTATEMENT OF PROPERTY § 7 (1936) states:
   "A possessory interest in land exists in a person who has
   (a) a physical relation to the land of a kind which gives a certain degree of physical control over the land, and an intent so to exercise such control as to exclude other members of society in general from any present occupation of the land...."

**13.** A lease clause which restricts the lessee's right to sublease *is for the lessor's exclusive benefit. Chilson v. Cavanagh,* 61 Okl. 98, 160 P. 601 syl.1, 603–604 (1916); *Jones v. Moncrief–Cook Co.,* 25 Okl. 856, 108 P. 403 syl.1, 405 (1908).

**14.** The pertinent provisions of RESTATEMENT (SECOND) OF TORTS § 821E are:
   "For a private nuisance there is liability only to those who have property rights and privileges in respect to the use and enjoyment of the land affected, including:
   (a) *possessors of the land....*" [Emphasis added.]

**15.** RESTATEMENT (SECOND) OF TORTS § 821D, cmt. a (1977); RESTATEMENT OF TORTS ch. 40, at 218 (1939). The pertinent terms of § 821D state:
   "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land."

The relevant parts of Comment a to § 821D state:
   "It is obvious from the history of the action for private nuisance that the interests originally protected were interests in the use and enjoyment of land.... [T]he plaintiff may recover *not only for harm arising from acts that affect the land itself and the comfortable enjoyment of it, but also for harm to members of his family and to his chattels.*" [Emphasis added.]

**16.** *Oklahoma City v. Tytenicz,* 171 Okl. 519, 43 P.2d 747 syl.2, 748 (1935); *City of Weatherford v. Rainey,* 151 Okl. 183, 3 P.2d 153, 154 (1931).

**17.** Mid–Continent has *not* assailed, either on appeal or on certiorari, the assessed amount of the punitive-damages award as "grossly excessive" punishment when measured by the Due Process Clause of the U.S. Const. amend. XIV. We hence need not, and do not, discuss the impact of *BMW of North America, Inc. v. Gore,* —— U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *Honda Motor Co. v. Oberg,* 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994); *TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993); or of *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), on the correctness of the punitive-damages award in this case.

**18.** *See* Tr. trans. p. 3437.

control by its parent.[19]   Moreover, Mid–Continent did not object to the proof of (a) Sun's control over its operations or (b) Sun's massive draining of Mid–Continent's assets.[20]   It cannot be said that under these circumstances evidence of Sun's financial condition is irrelevant to Mid–Continent's worth—a proper concern of the jury in awarding punitive damages.[21]

▉ The record amply demonstrates that Mid–Continent was financially capable of paying the damages assessed against it without destroying its ability to conduct business *in futuro*.[22]   Even if it was error to adduce Sun's financial information, the admission was at most harmless.

## IV

### THE TRIAL JUDGE'S DECISION NOT TO DECLARE A MISTRIAL FOR ALLEGED MISCONDUCT BY PLAINTIFFS' COUNSEL IS NOT REVERSIBLE ERROR IN VIEW OF HIS FIRMNESS AND CONTROL IN DEALING WITH THE ARGUABLY PREJUDICIAL REMARKS

▉ In order for counsel misconduct to effect a judgment's reversal, *substantial prejudice* must have resulted from the remarks and the jury must have been influenced to the material detriment of the appealing party.[23]   While the closing remarks of plaintiffs' counsel were couched in arguably intemperate rhetoric,[24] the trial judge correctly admonished the jury to rely solely on its recollection of the evidence rather than on counsel's own characterization of the proof.[25]   If plaintiffs' closing remarks did indeed amount to misconduct, the court, by its instructions, effectively minimized their consequence and prevented substantial prejudice to Mid–Continent.   Because of the trial court's remarkable and apt firmness in dealing with the erratic prose, its denial of Mid–Continent's mistrial quest cannot be viewed as reversible error.[26]

## V

### BECAUSE THE JURY EXONERATED BARRETT OF NEGLIGENCE–RELATED LIABILITY AND MID–CONTINENT FAILED TO OBJECT TO THE VERDICT FORM, WHICH DID NOT CALL FOR A FINDING OF NON–PARTY LIABILITY ON THE NUISANCE CLAIM, IT WAS ERROR FOR THE TRIAL COURT TO REDUCE THE PUNITIVE–DAMAGES AWARD BY THE AMOUNT OF SETTLEMENT PROCEEDS FROM BARRETT

Mid–Continent claims that under the provisions of 12 O.S.1991 § 832H [27] (Oklahoma's

**19.**   *See Frazier v. Bryan Memorial Hosp. Authority*, Okl., 775 P.2d 281, 288 (1989), for the law's test to determine if a subsidiary corporation is controlled by its parent.

**20.**   The record reflects that at 1993's year-end Mid–Continent had but $8,000 in its cash accounts on earned revenues of $18,000,538.   Tr. trans. pp 3588–3594.   The explanation offered, without objection, was that *Mid–Continent's cash disbursements were handled to a large degree by Sun*.   Tr. trans. p. 3588.   The record also reflects that in 1993 Sun received from Mid–Continent $4,000,000 in dividends.   Tr. trans. p. 3590.

**21.**   *Ramirez v. Baran*, Okl., 730 P.2d 515, 518 (1986); *Fawcett Publications, Inc. v. Morris*, Okl., 377 P.2d 42, 43 syl.6, 53 (1962).

**22.**   *See supra* note 20.

**23.**   *Teel v. Gates*, Okl., 482 P.2d 602, 604 (1971); *Key v. British American Oil Producing Co.*, 196 Okl. 663, 167 P.2d 657, 660 (1946).

**24.**   During the progress of his closing remarks, plaintiffs' counsel: (1) accused the defendant's witnesses of lying and committing perjury [*see* Tr. trans. pp. 3281, 3294 ("These people have no respect for the Oath, for the Lord, or for people."), 3326, 3329]; (2) accused the defendants of hiding evidence [*see* Tr. trans. pp. 3292, 3323, 3756]; (3) accused the defendants of threatening witnesses with suit if they testified at trial [*see* Tr. trans. pp. 3707, 3756]; (4) said that plaintiffs had to get a court order to enable Mr. Cole to testify [*see* Tr. trans. p. 3756]; and (5) blamed the court for preventing the jury from seeing the terms of the Barrett settlement agreement [*see* Tr. trans. p. 3757].

**25.**   *See* Tr. trans. pp. 3326, 3327, 3383, 3385.

**26.**   *See Faulkenberry v. Kansas City Southern Ry. Co.*, Okl., 602 P.2d 203, 208 (1979).

**27.**   The pertinent provisions of 12 O.S.1991 § 832H are:

version of the Uniform Contribution Among Tortfeasors Act [UCATA]) the trial court misapplied the Barrett settlement proceeds [28] and by so doing miscalculated the amount of punitive damages Mid–Continent must satisfy. The trial court evenly divided the total of the Barrett settlement proceeds ($100,000) between Exxon and Mid–Continent and credited that amount upon the jury award *assessed against each of these defendants* for the negligent injury to plaintiffs' cattle.[29]

In its argument *for* downsizing the punitive-damages award, Mid–Continent urges that Barrett's *contribution* towards payment for the same harm is not mere "credit" upon the amount due the plaintiffs under their judgment but rather calls for reduction of the jury award for actual damages, which in turn entitles Mid–Continent to a corresponding diminution of the punitive-damages amount by the coercive force of 23 O.S.1991 § 9.[30] Because we cannot treat Barrett's settlements proceeds as a § 832H contribution, it is unnecessary to settle here the precise nature of that contribution's impact upon the size of a punitive-damages award. Suffice it to reiterate that, because Barrett does not meet the standards of § 832H, its contribution is neither *credit* nor *reduction.* We so conclude and hold.

## A

## THE NEGLIGENCE–RELATED AWARD

▮▮▮▮ Allowing either Exxon or Mid–Continent to credit the Barrett proceeds against these defendants' individual liability for the negligence-related damages adjudged in the plaintiffs' favor was clearly error. By its verdict the jury *exonerated Barrett of liability.* During the trial Mid–Continent *attempted to ascribe to Barrett* the sole responsibility for polluting the Barnes Ranch. Its defense strategy was rejected by the verdict which allocated *no* liability on the negligence claim to non-parties. Under the provisions of § 832H a claim to settlement proceeds' credit *must be rested on the existence of other tortfeasors who are liable for the same injury as the settling party.*[31]

Since the jury has specifically found Barrett *not liable in tort for the same injury* as that attributed to Mid–Continent, the availability of Barnett's contribution would hinge here on the settlement agreement's text. Its language (a) *not only specifically excludes from discharge the other tortfeasors who*

"When a release, covenant not to sue, or a similar agreement is given in good faith to one of two or more persons *liable in tort for the same injury* ...:
  1. [I]t reduces the claim against the others to the extent of any amount stipulated by the release or covenant, or in the amount of the consideration paid for it, whichever is the greater;
  ...."

**28.** Exxon settled with the plaintiffs after the review process was initiated. In its petition for certiorari Mid–Continent claims as credit on the award the entire amount of proceeds which the plaintiffs were to receive under the Barrett settlement agreement's terms *because it is now the only non-settling defendant.* Application of the Barrett settlement proceeds in light of the Exxon settlement agreement presents a post-judgment issue which the trial court has not yet considered. It would be improper for this court to act upon this issue as a tribunal of first instance. *Toxic Waste Impact Group, Inc. v. Leavitt,* Okl., 890 P.2d 906, 913 (1995); *Dyke v. St. Francis Hospital,* Okl., 861 P.2d 295, 300 n. 13 (1993); *Teel v. Teel,* Okl., 766 P.2d 994, 999 n. 19 (1988);

*American Ins. Ass'n v. Indus. Com'n,* Okl., 745 P.2d 737, 740 n. 15 (1987); *Sandpiper North Apartments v. Am. Nat. Bank,* Okl., 680 P.2d 983, 993 (1984); *Matter of Estate of Bartlett,* Okl., 680 P.2d 369, 377 (1984); *Davis v. Gwaltney,* Okl., 291 P.2d 820, 824 (1955).

**29.** The trial judge predicated the settlement proceeds' division upon the holding of *Price v. Southwestern Bell Telephone Co.,* Okl., 812 P.2d 1355 (1991). His reliance was misplaced. Unlike in *Price,* the plaintiffs here are *not faultless. Id.* at 1359.

**30.** The pertinent terms of 23 O.S.1991 § 9 are:
  "A. In any action for the breach of an obligation not arising from contract ..., the jury, in addition to actual damages, may give damages for the sake of example, and by way of punishing the defendant, *in an amount not exceeding the amount of actual damages awarded....* " [Emphasis added.]

**31.** *See Shadden v. Valley View Hosp.,* Okl., 915 P.2d 364, 369 (1996), for the holding that § 832H requires the presence of a *common liability* among multiple tortfeasors for the injury

were sued for the same injury but also (b) *clearly evinces* the parties' intent *not to treat the settlement proceeds as full compensation* for the plaintiffs' damages.[32] Viewed in the context of the jury's exoneration of Barrett, the terms of the settlement are too narrow to lend support for Mid–Continent's claim to the credit sought.[33]

### B

### THE NUISANCE–RELATED AWARD

■ A judgment debtor's § 832H claim to settlement proceeds' credit is *conditioned upon the settling party's liability in tort for the same injury.* After the plaintiffs settled with Barrett and dismissed that defendant from the case, Mid–Continent, if it wished to pursue the now-claimed § 832H credit, was required to press for a jury assessment of Barrett's "ghost-tortfeasor" liability in both negligence and nuisance.[34]

■ Barrett's liability for nuisance *was not* submitted to the triers. Barrett's exclusion from jury consideration as a nuisance co-actor was never challenged. Although Mid–Continent's counsel attempted during trial to convince the jury of Barrett's fault for the Barnes Ranch pollution, he did not interpose either (1) a pre-submission objection to the trial court's form of verdict on the nuisance claim (which excluded Barrett), or (2) a post-submission objection—before the jury's discharge—when the verdict was brought into the courtroom but before its acceptance by the trial judge.[35] Either pro-

cedural vehicle was available to secure the jury's assessment of Barrett's non-party's liability on the nuisance claim. A jury's allocation of fault to Barrett was critical to Mid–Continent's demand for a settlement proceeds' credit.[36]

*Absent any liability ascription* to Barrett as a non-party co-actor, Mid–Continent stands relegated to the language of the Barrett settlement agreement. The settlement agreement's terms offer no legal warrant for extending its benefits to Mid–Continent.

In short, because Mid–Continent cannot satisfy the statutory requirements in § 832H, it is not entitled to claim the Barrett settlement's proceeds as a credit upon the awards adjudged against it.

### C

### THE PUNITIVE–DAMAGES AWARD

■ The trial court allowed both Exxon and Mid–Continent one-half of the Barrett settlement proceeds as a § 832H credit and offset that amount against their respective percentage of the jury award for negligence-related damages. The court reasoned the offsets reduced the plaintiffs' total actual damages to $155,000. It then capped the punitive-damages award at $155,000 by applying the provisions of 23 O.S.1991 § 9.[37] Because under today's holding the Barrett settlement proceeds are *not available to reduce* the compensatory damages of $250,000,

---

sustained by the plaintiff. Absent these elements, § 832H is not invocable.

**32.** The Barrett settlement agreement provides in pertinent part:

"[T]he release applies only to the parties specifically named above as being released and shall in no way release, discharge or otherwise affect Nichols' claims as against any other persons, including without limitation, Mid–Continent Pipe Line Company, Exxon Corporation or their officers, directors, insurers, agents, servants, employees or affiliated companies."

**33.** *See Moss v. City of Oklahoma City,* Okl., 897 P.2d 280, 286 (1995), where the court held that a release discharges from liability only those who are specifically identified by its text. *See also, Hoyt v. Paul R. Miller, M.D., Inc.,* Okl., 921 P.2d 350, 357 (1996).

**34.** *See Paul v. N.L. Industries, Inc.,* Okl., 624 P.2d 68, 69 (1981). There the court held that the negligence of tortfeasors who are not parties to the lawsuit ("ghost" tortfeasors) should be considered by the jury. *Id.* at 69. *See also, Angel v. Cornell Const. Co., Inc.,* 841 P.2d 1163, 1165 (Okla.App.1992), *cert. den.* Nov. 24, 1992.

**35.** *Rodebush v. Oklahoma Nursing Homes, Ltd.,* Okl., 867 P.2d 1241, 1245 n. 2 (1993); *Morgan v. Oklahoma Nat. Gas Co.,* Okl., 561 P.2d 1363, 1364 (1977); *Bunch v. Perkins,* 198 Okl. 517, 180 P.2d 664 syl.3, 666 (1947); *Eoff v. Alexander,* 62 Okl. 12, 161 P. 807 (1916).

**36.** *See Osburn v. Bendix Home Systems, Inc.,* Okl., 613 P.2d 445, for a comparable procedural outcome.

**37.** For the pertinent terms of 23 O.S.1991 § 9, see *supra* note 30.

the plaintiffs are entitled to the $250,000 award in punitive damages.

## VI

### THIS COURT CANNOT REACH FOR RELIEF TO THE PLAINTIFFS THAT PORTION OF THE COURT OF APPEALS' OPINION WHICH SUSTAINED THE TRIAL COURT'S CREDIT FOR THE BARRETT SETTLEMENT PROCEEDS AGAINST THE NEGLIGENCE–RELATED ACTUAL DAMAGES AWARD

Extant jurisprudence[38] holds that corrective relief from issues *resolved* by the Court of Appeals, but not *explicitly pressed* for certiorari review, is beyond this court's power to grant. In *Hough v. Leonard*[39] we clarified what may be considered on certiorari. *Hough* (and Rules 3.14 and 3.15, 12 O.S. Supp.1992, Ch. 15, App. 3, Rules on Practice and Procedure) teaches that issues not presented in the petition for certiorari may not generally be reviewed, unless the Court of Appeals has failed to decide all the issues the successful party had argued in that court on appeal. In the latter situation, this court may, *sans* certiorari petition, either (a) reach for review the undecided questions or (b) remand them to the Court of Appeals for a decision. The question of what credit is due Mid–Continent for the settlement proceeds from Barrett was resolved on appeal.

*Although the plaintiffs were unsuccessful before the Court of Appeals, they did not seek certiorari.* The settled-law-of-the-case doctrine bars from relitigation issues (a) finally settled in the process of review or (b) those that the aggrieved party has failed timely to raise in the course of the appellate contest.[40] In short, plaintiffs may not secure *any relief in this court* from the erroneous

## VII

### SUMMARY

The verdict for negligence-and nuisance-related damages is sustainable because (1) the plaintiffs are within the class of persons authorized to bring such claims and (2) any reversible errors which did occur would have inured to the plaintiffs' benefit if they had been preserved for review by certiorari.

The trial court erred in the manner in which it applied the Barrett settlement proceeds to reduce the negligence-related and punitive-damages award. Because Barrett was exonerated of liability for the negligent injury (to the plaintiffs' cattle) and Mid–Continent acquiesced in the jury's failure to assess Barrett's liability for the nuisance-related harm, the Barrett settlement proceeds should not have been credited under the provisions of § 832H against the jury award.[41] The statutory text of that provision is plain. The settling party must be liable for the same injury as the non-settling party. It was within Mid–Continent's power to preserve its claim to a § 832H credit by either a pre-submission or post-submission objection to the trial court's form of verdict which excluded Barrett from consideration of liability for nuisance. Mid–Continent did not do so and the jury failed to assay Barrett's liability as a "ghost-tortfeasor".

Because credit for the Barrett settlement proceeds was *not* Mid–Continent's due under the provisions of § 832H, the nisi prius reduction in the amount of compensatory damages (the $250,000 award) was error. *Mid–Continent is not entitled to any credit on the punitive-damages award; plaintiffs, who did not seek certiorari, are bound by the reduction in the actual damages award affirmed by the Court of Appeals.*

reduction of actual damages due them under the verdict.

**38.** *Hough v. Leonard,* Okl., 867 P.2d 438 (1993).

**39.** *Hough, supra* note 38 at 445.

**40.** *Jackson v. Jones,* Okl., 907 P.2d 1067, 1074 n. 37 (1995); *Morrow Dev. v. American Bank and Trust,* Okl., 875 P.2d 411, 413 (1994); *Panama Processes v. Cities Service Co.,* Okl., 796 P.2d 276, 283 n. 27 (1990); *Reeves v. Agee,* Okl., 769 P.2d 745, 756 n. 46 (1989); *Mobbs v. City of Lehigh,* Okl., 655 P.2d 547, 549 n. 5 (1982).

**41.** For the pertinent terms of 12 O.S.1991 832H, see *supra* note 27.

On certiorari granted upon Mid–Continent's petition,

THE COURT OF APPEALS' OPINION IS VACATED, THE NISI PRIUS JUDGMENT IS REVERSED IN PART, AND THE CAUSE IS REMANDED WITH DIRECTIONS TO PROCEED IN A MANNER NOT INCONSISTENT WITH TODAY'S PRONOUNCEMENT.

KAUGER, V.C.J., and LAVENDER, HARGRAVE and WATT, JJ., concur.

ALMA WILSON, C.J., concurs in part and dissents in part.

HODGES, SIMMS and SUMMERS, JJ., dissent.